FRITZ v. STATE.

Opinion delivered January 4, 1909.

1. FISH AND GAME—VALIDITY OF NONEXPORTATION ACT.—The act of February 14, 1905, providing that it shall be unlawful "to ship, export or carry beyond the lines of this State any deer, turkey, wild fowl, game fish or game of any description," etc., is a valid statute. (Page 576.)

2. SAME—VALIDITY OF REGULATION AS TO CATCHING FISH.—Acts 1907, p. 912, providing that "no person shall be allowed to place, erect or cause to be placed or erected or maintained in any of the waters of this State, or in front of the mouth of any stream, slough or bayou, any seine net, gill net, trammel net," etc., is a valid exercise of the State's power to regulate the catching of fish. (Page 578.)

3. SAME—RIGHT TO CATCH FISH IN LAKE.—Fish in a lake not wholly upon any one's premises cannot be lawfully caught except in the manner provided by the statute. (Page 578.)

Appeal from Crittenden Circuit Court; *Frank Smith,* Judge; affirmed.

*Randolph & Randolph* (of Memphis, Tenn.), and *H .F. Roleson,* for appellant.

As to the first case, Fritz, having acquired title to the lands while the common-law right of fishery was the law of the State, he thereby acquired, as a part of, and appurtenant to, his grant, the right to take fish from the lands, and also the right to ship them from the State; and the act of the Legislature prohibiting the shipment of fish from the State was, as to him, unconstitutional and void.

As to the second case, the court should have declared the law to be that the owner of opposite shores of an inland unnavigable lake, who acquired title thereto while the common-law respecting the rights of fishing was in force, acquired as a part of the grant of the lands, as privileges and appurtenances thereof, the right to take fish therefrom by net, and that the act of the Legislature was unconstiutional and void as to appellant. The fish were a part of the land, or the produce of the land, owned by appellant, and belonged to him absolutely as his individual property. Treaty between United States and Republic of France, April 30, 1803, art. 3, Kirby's Digest, p. 171; Kirby's Digest, p. 174 (admission of Arkansas into Union); *Id.* p. 177; *Id.* § 623; 8 Wheaton, 1; 23 Minn. 144; 44 Mich. 274; 13 How. 518, 566, s. c. 18 How. 432-433; 5 Wall. 737; 95 U. S. 517; 18 How. 173; 179 U. S. 223; Rev. Stat. U. S. § 2395, *et seq.*; 3 How. (U. S.), 663; 7 Wall. 270; Rev. Stat. U. S. § § 2476, 2478; 1 Lester's Land Laws, 714; 134 U. S. 178; 140 U. S. 414; 190 U. S. 452; 109 Fed. 354; 69 Ark. 39; 71 Ark. 390; 76 Ark. 44; Gould on Waters, § 76. The act of Congress of September 28, 1850, vested title in the State to all the swamp and overflowed lands in the State then remaining unsold, and it remained only to ascertain the particular lands included in said grant, and, when the selections were made, approved and patents issued, the State's title to the lands was perfect. Act of Congress, March 3, 1857; 11 U. S. Stat. at Large, 251; Rev. Stat. U. S. § 2484; 20 Ark. 100; *Id.* 237; 24 Ark. 431; 29 Ark. 56; 33 Ark. 833; 46 Ark. 17; 54 Ark. 251; 11 Fed. 389; 121 U. S. 488; 138 U. S. 134; 138 U. S. 573; 149 U. S. 79; 171 U. S. 93; 31 U. S. App. 731. In the absence of any reservation of title or interest by the United States in its patent or grant either directly to Fritz or his grant-

ors, or by way of the Swamp Land Act of 1850 to the State and thence to Fritz or his grantors, the whole of the Government's title in the lands, whether in the lake or abutting thereto, passed absolutely by the patent, grant or act of Congress. Kirby's Digest, § 733; 128 U. S. 691; 44 Mich. 403; 52 Minn. 181; 190 U. S. 519; 96 U. S. 530; 109 Fed. 354; 209 U. S. 447. If the State acquired title under the Swamp Land Act, then its grant to Fritz or his grantors conveyed all the title to the land and lake that either the State or the United States ever had therein. 141 Ind. 197; 145 Ind. 221; 69 Ark. 341; 190 U. S. 518; 209 U. S. 447; 24 How. 41; 4 Mo. 342; 17 Johns. (N. Y.), 195; 134 N. Y. 355; 10 Mich. 125; 58 Ind. 248; 7 Wall. 272; 140 U. S. 406; *Id.* 371; 159 U. S. 87. The lands under the lake are therefore held and owned by Fritz as incidents of the grants of the lands outside of the lake or its meander lines. 128 U. S. 691; 17 Johns. 195. See also 20 Johns. 90; 32 N. Y. L. 369; 2 Conn. 481; Angell on Watercourses, § § 11, 61-2, 65, 545-547; 5 Mason (U. S.), 191; 5 Paige Ch. (N. Y.), 137; Gould on Waters, § 79 *et seq.,* and 182. As to what is included in the term "land," see Coke's Littleton, 19-20; 2 Blackstone's Com. ch. 2, *17, 18. And as to how rivers, lakes and ponds are considered in this country as to navigability and non-navigability, etc., see Angell on Watercourses, § § 1-5, and 535-541; Gould on Waters, § § 42, *et. seq.,* 86 *et seq.,* 110 *et seq.;* 3 Cates (Tenn.), 668; 69 S. W. 782; 53 Ark. 314; 33 W. Va. 14; 10 S. E. 60; 25 Am. St. Rep. 862; 116 N. Car. 731; 21 S. E. 941.

2. A fishery at common law was always regarded as a part of the landed estate. The State, as representative of the public, has no title to the fish in waters belonging to private individuals, and no right to regulate the taking or use of such fish. Where they are in a pond or stream of water which does not connect with any public water, the individual owner has the right to the fishing, without regulation by the public as to the manner in which he does the same. 2 Farnham on Waters and Water Rights, § § 368c, 371, 373, 375, 378, 380, 382, 396, 397a, 398-9; 26 Wend. (N. Y.), 404; 33 N. Y. 472; 35 N. Y. 454; Gould on Waters (3 Ed.), § 46; 19 Cyc. 999, and cases cited. Where the title to small lakes and ponds has been retained by the State, the right of fishery is also retained; but where waters are private

property, the fishery therein is private. In such case the only way whereby the State or public may acquire the right of fishery therein is by the exercise of the power of eminent domain upon making compensation. 3 App. Cas. 641; Ir. Rep., 8 C. L. 68; Ir. L. R., 23 Eq. 402; 68 Vt. 338; 33 L. R. A. 569; 35 Atl. 323; 43 Ill. 447; 92 Am. Dec. 146; 26 Can. S. C. 444; 47 O. St. 326; 8 L. R. A. 578; 21 Am. St. Rep. 686; Gould on Waters, § 46; 92 N. Y. 465; 134 N. Y. 355.

3. The rights of the owner of a stream extend as far as the boundaries of his land; and if he owns the soil on one shore of a non-navigable stream, his rights extend to the centre, the middle of the stream at low water mark being the limit or dividing line between owners of opposite shores, with respect to the right to fish from opposite banks. 2 Farnham on Waters and Water Rights, § 396; 3 Kent's Com. *p. 411-418, *et seq.* If the fish are confined in ponds or on private property, so that they can not escape, the title is in the owner of the pond, though it may be stocked at public expense. 2 Farnham on Waters, etc., § 397a; 67 N. H. 529; 64 N. J. L. 330. The mere fact that one who owns part of a pond does not own the whole thereof, and that there is nothing to prevent the fish from going over on the land of another, does not give strangers a right to fish over the lands of the owner of a part of the pond without his permission. 2 Farnham on Waters, etc., § 400; 162 Mass. 219.

4. Any attempt by the statutes upon which the indictments in these cases are based to curtail, limit, qualify or control appellant's right to the fish in the lake, his right to take, or the method of taking them by him, or his use or disposition of them after taking, is an infringement of his rights, privileges and immunities secured to him by the Constitution of the State and of the United States. 53 Ark. 490; 73 Ark. 236; 75 Ark. 542; Cooley's Const. Lim. (6 Ed.), 489, note 3; 113 U. S. 27; 118 U. S. 369.

5. If there is any law in this State whereby, under the agreed statement of facts, appellant may be held guilty of a violation thereof, punishable by law, such law is void as to him because it violates (a) that part of the Constitution of the United States which prohibits any State from passing any law impairing the obligation of contracts; (b) that part same Constitution which grants to Congress the exclusive right to regulate com-

merce; (c) that part same Constitution and 14th Amendment thereof securing to the citizens of every State the rights, privileges and immunities of citizens of the several States, and entitling them to the equal protection of the laws of every State, and (d) that part same Constitution and Amendment declaring that no person shall be deprived of liberty or property without due process of law. Such law is also in violation of art. 2, § 2, art. 2, § 8, art. 2, § 21, art. 2, § 22, art. 2, § 28, Const. Ark. (1874.)

*William F. Kirby,* Attorney General, for appellee; *Brown & Anderson* (of Memphis, Tenn.), and *A. B. Shafer,* of counsel.

The owner of land upon which is located a lake or stream which is not *entirely* upon the property of the landowner is subject to such rules and regulations as the Legislature may see fit to enact for the preservation of fish and game. Such owner has no such property in the fish found in such lake or stream as he has to the crops grown upon land. It has always been the law in this State that the title to fish and game is in the State as trustee for the public, and the State has the paramount right to make such rules and regulations in regard to fish and game as, in the opinion of the Legislature, is for the best interests of the public and for the preservation of such fish and game. 56 Ark. 267; 68 Ark. 487; 68 Ark. 555; 73 Ark. 248. It was manifestly the intention of the Legislature to provide a general system of laws for the preservation of fish and game within the State. Kirby's Digest, § § 3598-3626. "Waters of this State" has been defined to mean "all streams, lakes, ponds, sloughs, bayous or other waters, wholly or in part within this State." *Id.* § 3605.

2. The mere fact that appellant owned the land on opposite sides of the lake does not bring appellant within the *proviso* to the act, excepting "waters wholly on the premises of such person or persons using such device or devices." Under the agreed statement of facts, the waters of Horseshoe Lake are not wholly on the premises of appellant. Its waters are therefore public. 96 Tenn. 681; 157 Pa. 208; 85 Mo. 543. And appellant's rights are subordinate to that of the State as representative of the public. 73 Ark. 248, citing 161 U. S. 519; 56 Ark. 267; 68 Ark. 867; 69 Ark. 555.

3. One can not acquire a complete property right in game so as to exempt him from the provisions of a State law enacted

for the preservation of the game supply of that State for the use of its inhabitants. 161 U. S. 519; 152 U. S. 132.

BATTLE, J. In the first case Louis Fritz was indicted by the grand jury of Crittenden County and accused as follows: "The said Louis Fritz and Henry Smith on the 5th day of November, 1907, in the county of Crittenden, State aforesaid, did then and there unlawfully ship and export beyond the lines of this State certain game fish."

He pleaded not guilty, and by agreement was tried before the judge, sitting as a jury, upon the following agreed statement of facts: "It is agreed, as the facts in this case, that defendant, within one year prior to the return of the indictment in this case, took certain game fish from that part of Horseshoe Lake, bounded on the east side by frl. southwest quarter of section twenty-five, and on the west side by frl. southeast quarter of section twenty-six, in township 4 north, range 7 east, and shipped the same from the State of Arkansas to Memphis, Tennessee. That said tracts of land border upon said lake on opposite sides of the same. That Horseshoe Lake is an unnavigable inland lake, lying in Crittenden County, Arkansas, and that the grantors of the defendant owned the fee simple title to said lands prior to the passage by the Legislature of Arkansas of any laws regulating or prohibiting the taking of fish from the waters of this State, or any law prohibiting the shipping of the same from this State. That said lands were at the time they were acquired by the defendant, and are now, chiefly valuable for the fishing adjacent thereto."

He was found guilty and his punishment was fixed at a fine of one hundred dollars, and plaintiff appealed.

The indictment is based upon section one of an act entitled "An act to amend section 3620 of Kirby's Digest," approved February 14, 1905, which is as follows:

"It shall be unlawful for any person, or persons, or corporation, to ship, export or carry beyond the lines of this State any deer, turkey, wild fowl, game fish, or game of any description, and any railroad company, express company, corporation, or individual who shall ship, export or carry, or receive for shipment, or export, or carry beyond the State line of Arkansas, any game fish, deer, turkey, or game of any kind, except rabbits, shall be

deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum not less than one hundred dollars, nor more than five hundred dollars, for each separate offense," etc.

This statute has been sustained and held valid by this court. *Organ* v. *State,* 56 Ark. 267; *State* v. *Mallory,* 73 Ark. 236, 248, 249. See *Geer* v. *Connecticut,* 161 U. S. 519.

The evidence was sufficient to sustain the conviction in the first case.

In the second case Fritz was indicted and accused as follows:

"The said Louis Fritz, on the 20th day of November, 1907, in the county of Crittenden, State aforesaid, did then and there unlawfully place and erect in the waters of this State, then and there being in the county of Crittenden and State of Arkansas, a certain net for the purpose of taking fish from said waters."

He was by agreement tried before the judge, sitting as a jury, upon an agreed statement of facts in writing as follows:

"The defendant, Louis Fritz, admits that he is guilty of the crime of unlawful fishing, as charged in the indictment, unless the following agreed facts exonerate him:

The State of Arkansas admits that the defendant is the owner in fee simple of the fractional southwest quarter of section twenty-five, township four north, range seven east, which borders on the east bank of Horseshoe Lake, and that he also owns in fee simple the fractional southeast quarter of section twenty-six, same township and range, which borders on the west bank of said lake, directly opposite the first described tract. That the fishing alleged to be unlawful in the indictment was done between the two tracts of land in said lake. Horseshoe Lake is an unnavigable inland lake wholly within said county of Crittenden, running in the shape of a horseshoe a distance of about seven miles, and different persons own different parts of the lands which border it on each side. That the defendant's grantors acquired title to the above lands prior to the passage of any law prohibiting or regulating the catching of fish in this State. That the said lands are now, and were at the time when acquired by the defendant, principally valuable for the fishing adjacent thereto in said lake."

He was found guilty, and his punishment was fixed at a fine of ten dollars; and he appealed.

The second indictment was based upon the following statute:

"No person shall be allowed to place, erect, or cause to be placed or erected or maintained in any of the waters of this State, or in front of the mouth of any stream, slough or bayou, any seine net, gill net, trammel net, set net, bag weir, bush drag, any fish trap or dam, or any other device or obstruction, or by any such means to take or catch any fish in the waters of this State. Provided the prohibition of this section shall not apply to waters wholly on the premises belonging to such person or persons using such device or devices," etc. Acts of 1907, page 912.

"Waters of this State," as defined in an act of which the above statute is an amendment in part, are "all streams, lakes, ponds, sloughs, bayous, or other waters, wholly or in part, within this State." Act of March 27, 1885, section 2.

Section 3601 of Kirby's Digest makes a violation of these statutes a misdemeanor, punishable by fine of not less than five dollars nor more than $200.

The statute upon which the indictment in the second case was based was upheld and sustained as a good and valid statute in *Lynch* v. *State*, 69 Ark. 555, and by the reasoning of the court in *State* v. *Mallory*, 73 Ark. 236. The right and power of the State to regulate the catching of fish is generally conceded. *Lawton* v. *Steele*, 152 U. S. 133; *Geer* v. *Connecticut*, 161 U. S. 519.

It is contended, on behalf of appellant, that the statute did not prohibit him from placing or erecting a net in Horseshoe Lake. It (lake) is "about seven miles long, and different persons own different parts of the land which border on each side. It is not wholly upon the premises of the appellant, and is a part of the "waters of the State," as defined by the statute. The fish in the same were not in the possession or control of any one, and constituted the private property of no one, and could not be lawfully caught except in the manner provided by the statute. *Peters* v. *State*, 96 Tenn. 682; *Reynolds* v. *Commonwealth*, 93 Pa. St. 458; *Benscoter* v. *Long*, 157 Pa. St. 208; *State* v. *Blount*, 85 Mo. 543.

The evidence was sufficient to sustain the conviction.

The judgments in the two cases are affirmed.