ARKANSAS GAME & FISH COMMISSION *v.* STORTHZ.

Opinion delivered June 16, 1930.

*Hal L. Norwood,* Attorney General, *Robert F. Smith,* Assistant, and *Guy Amsler,* for appellant.

*Ingram & Moher,* for appellee.

MEHAFFY, J. This is a suit by appellee for the cancellation of contracts, for an accounting, for judgment for the value of fish taken from certain lakes and for a restraining order. Appellee alleged that he was the owner of the soil upon which "H" and "Dry" Lakes are situated in the southern district of Arkansas County; that said lakes are wholly upon his property, and are not connected with any navigable or other stream. He alleges that said lakes are private lakes or ponds. The lakes are described, and it is alleged that the appellant entered into a contract with Eugene Harper, Will Ray and Sanford Bonner, giving said Harper, Ray and Bonner the exclusive right to trap and seine fish in a number of lakes, including H Lake and Dry Lake. The parties agreed to pay the State one cent per pound for the fish taken. The evidence shows that H Lake is located entirely on appellee's land, and Dry Lake is either entirely on appellee's land or on his land and the land of another private owner. Neither of these lakes is connected with any navigable stream except during high water or overflow, and then the whole surrounding country overflows. The following stipulation was by agreement introduced in evidence:

"By agreement between the parties the money paid to the commission by Harper, Ray and Bonner on the fish taken from H, Dry and Parish Lakes was deposited in the People's Trust Company to be held pending the outcome of this litigation. It was agreed that said sum represents whatever damage the plaintiff sustained by virtue of defendant's operations. It is agreed that section 16 of township 6 south, range 1 west, shown on the Quertermous map as school lands, is now the property of the White River Lumber Company. It is also agreed that the lakes involved in this controversy are non-navigable and non-meandered."

The foregoing was all of the evidence introduced on behalf of plaintiff. When plaintiff (appellee) completed the taking of testimony, defendant (appellant) filed its

motion to dismiss, and for cause said that the evidence introduced by plaintiff did not entitle him to the relief sought.

By agreement the cause was submitted upon the complaint; the amendment thereto; the stipulation; the depositions of Strode, Martin, Quertermous, Wheeler and Storthz with the exhibits to same, the answer and exhibits thereto, and the motion to dismiss.

Whereupon the court entered an order dismissing the complaint of plaintiff, Storthz, as to Parish and Dry Lakes and rendering judgment for him in the amount of $417.53, which is supposed to represent one cent per pound on the fish which were taken from H Lake. No ruling was made upon appellant's motion to dismiss, and, after the court's ruling, appellant was not permitted to introduce proof bearing upon the issues as to H Lake.

The commission has appealed from that part of the chancellor's ruling with reference to "H Lake."

It was also agreed that, if Joe Storthz would testify that the plaintiff is the owner of the lands around Dry and H Lakes, this may be used in evidence. Joe Storthz testified that his father, the plaintiff, was at the commencement of the suit the owner of the lands upon which Dry and H Lakes are situated; that he had owned these lands about twenty-five years, and had paid the taxes on all of these lands since he had owned them. Joe Storthz also testified these lakes are located on lands that now belong to him and his brother, but at the commencement of this suit said lands belonged to his father; that these lakes are not connected with any navigable waters; that they are inland bodies of water.

The statute with reference to fish being the property of the State expressly excepts fish in private ponds. C. & M. Digest, § 4753.

There is no provision in § 2 of act 151 of the Acts of 1927 exempting from the application of said act waters wholly on the premises belonging to an individual, but, when this act is considered with § 4753 of C. & M. Digest,

we think it is perfectly plain that the Legislature did not intend that this should apply to waters wholly on the premises belonging to individuals. The intention of the Legislature is shown by the passage of act 82 of 1929, § 1, of which reads as follows: "Hereafter no agreement shall be made by the Arkansas Game and Fish Commission with any person or firm under the provisions of § 2 of act 151 of the 1927 General Assembly, whereby such person or firm is authorized to enter upon any lake that is not meandered by U. S. Government surveys and upon which taxes are paid, for the purpose of removing any fish therefrom for commercial purposes unless permission in writing is first procured from the party or parties owning the lands around and under such lake."

This court has said: "It can be stated without question that primarily the title to game and fish are and have for all time been in the sovereign, but the nature and extent of that title and the purposes for which it is held are not altogether free from doubt. Originally, the title seems to have been regarded as vested in the sovereign as a personal prerogative, but as civilization advanced it grew to be differently regarded, not as a personal right of kings but as a portion of the common property of subjects. It is said that by the Roman law animals *ferae naturae* were classified as common property, which, having no owner, were considered as belonging to all the citizens of the State; yet the right of the owner of land to forbid another from killing game on his property was recognized as a part of the rights of ownership of the land. * * * But nowhere do we find in modern times that the absolute and unqualified ownership of such animals by government has been asserted and exercised further than for the purpose of controlling and regulating the taking of the same. On the other hand, we find frequent denial of the right of government to do more. * * * We assume, therefore, as firmly established by authority, that the State's ownership of fish and game is not such a proprietary interest as will authorize a sale thereof, or the

granting of special interests therein, or license to enjoy, but is solely for the purpose of regulation and preservation for the common use, and is not inconsistent with a claim of individual or special ownership by the owner of the soil, if it be found that there can be any such individual or special ownership. * * * We therefore conceive it to be settled by authority and by long recognition in the law that the owner of the land has a right to take fish and wild game upon his own land, which inheres to him by reason of his ownership of the soil. It is a property right, as much as any other distinct right incident to his ownership of the soil. It is not, however, an unqualified and absolute right, but is bounded by this limitation, that it must always yield to the State's ownership and title, held for the purposes of regulation and preservation for the public use. These two ownerships or rights, that is to say, the general ownership of the State for one purpose, and the qualified or limited ownership of the individual, growing out of his ownership of the soil, are entirely consistent with each other, and in no wise conflict." *State* v. *Mallory,* 73 Ark. 236.

The State, not only under the common law, but under the decisions of this court has the right under its title to regulate and preserve for the public use, but it has no right to prohibit the owner of land upon which there is a lake to take fish therefrom. It would not have the right to make the contract made in this instance, giving persons other than the landowner the exclusive right to take fish, even if the lake was not entirely on the land of one person. The persons owning land bordering on the lake have the right to take fish therefrom subject only to the right of the State to regulate and preserve for the public.

We deem it unnecessary to review the authorities in this case because in the case we have just cited, *State* v. *Mallory,* the court reviewed the authorities and announced the rule which has since been followed in this State.

1094

"The only justification for a law regulating and restricting the common right of individuals to take wild game and fish is the necessity for protecting same from extinction and thus to preserve and perpetuate to the individual members of the community the inalienable rights which they have had from time immemorial." *Lewis* v. *State,* 110 Ark. 204.

In a later case, this court said: "It is unnecessary in the present case to pass on the question as to whether or not the Legislature has the power to regulate fishing in private ponds wholly on the premises of an owner, and we content ourselves merely by deciding the question as to whether or not such an attempt has been made in this statute." *Milton* v. *State,* 144 Ark. 1.

The numerous authorities are again discussed in the Milton case, and while it was not decided whether the Legislature had power to regulate fishing in private ponds wholly on the premises of the owner, it is not necessary to decide that question in this case because the Game and Fish Commission undertook in this case to give other parties the exclusive right to take fish and deprive the owner of the land of that right. We do not think the Legislature intended to pass a law to this effect, and it would not have authority to do so. Numerous authorities are cited and discussed by counsel, but we think the question here has been settled by the decisions of this court, and it becomes unnecessary to review the authorities cited by counsel. We think that where the lake or pond is entirely within the land of the owner, and no means of passage by which fish can migrate to the waters of other owners, such single owner will own the fish as well as the fishing rights. The evidence in this case shows that there is no more means of fish getting into this lake from the river than there is of fish from the river getting all over the surrounding country. We think the evidence shows that both these lakes are inland lakes, and in times of high water fish might go from the river to the lake or from the lake to the river, not because there is

any outlet from the lake or any channel from the lake to the river, but because the entire country overflows, including the lakes.

It is next insisted by appellant that it is entitled to a ruling on its motion to dismiss, and that it should have been permitted to introduce testimony, but the stipulation filed by counsel is in part as follows: "By agreement the cause was submitted upon the complaint, the amendment thereto, the stipulation, the depositions of Stroude, Martin, Quertermous, Wheeler and Storthz with the exhibits to same, the answer and exhibits thereto, and the motion to dismiss. The parties also agreed that the case might be decided by the chancellor in vacation, and it was submitted by agreement without any request on the part of the appellant to take testimony. The decree also recites that it was submitted by agreement, and it was after the court had rendered its decree that the appellant requested permission to introduce testimony. The refusal to permit this after the decree was not an abuse of the court's discretion. As to the motion to dismiss, it is sufficient to say that it was submitted together with the case, and the motion to dismiss was based on the alleged ground that there was no evidence to justify a decree. Of course, the finding in favor of the appellee was in effect an overruling of the motion which was based on the ground that there was no evidence to justify a decree.

The Game and Fish Commission had no authority to make the contracts giving persons the exclusive right to take fish from these lakes, and said contracts should be canceled. The decree of the chancery court is affirmed on appeal, and on cross-appeal as to Dry Lake the decree is reversed, and the cause is remanded with directions to cancel the contracts as to this lake and ascertain the amount of fish taken from Dry Lake and enter a decree for that amount, and to grant the injunction as to Dry Lake.