McGahhey *v.* McCollum, Administrator.

4-7332                                179 S. W. 2d 661

Opinion delivered April 24, 1944.

*Joseph Morrison,* for appellant.

*John W. Moncrief* and *Jeff Davis,* for appellee.

McHaney, J. Appellant brought this action, as a class suit, for himself and all others similarly situated, against appellees, who are the administrator, the widow and the daughter and only heir at law of John L. Ingram, deceased, and R. E. Meinert, trustee, to enjoin them from interfering with appellant and others in the use and enjoyment of Cook's Lake for hunting, fishing and other similar lawful purposes.

The complaint alleged that, at the time of his death, John L. Ingram was the owner of a large body of land in the White River bottoms, describing it, within the boundaries of which is a lake known as Cook's Lake; that said lake was meandered by the governmental survey as Cook's Lake; that said lake is a public one belonging to the state, has never been enclosed with a fence, and the public has always used said lake for hunting and fishing; that it has no connection with White River, except in high stages the water from the river overflows into and passes through said lake; that on September 25, 1943, the appellees, administrator, widow and heir, with court approval, entered into a lease agreement with appellee, Meinert, trustee, by which the surface of said tract of land, said lake and the land covered by same were granted to the lessee; that is, it granted to him the exclusive right to the possession of said land and said lake and the right to exclude appellant and the public which he proposes to do and is now in the process of enclosing said tract of land with a fence and posting same; that appellant and others have recently been prevented from using said lake by Meinert and his agents, who will continue to do so unless enjoined; that said lake is a navigable one; and that it and the land under its waters belong to the state. Appellees answered admitting the ownership of said lands as alleged, the lease agreement, and denying many allegations and particularly

denying that said lake is navigable or that it belongs to the state, and asserting ownership in fee in the widow and heirs of said Ingram. There was a cross-complaint against appellants praying an injunction restraining appellant and others from interfering with the enclosure by appellees of said lands and from hunting, fishing or otherwise trespassing on said land or said lake.

Trial resulted in a finding of facts in part as follows: "That Cook's Lake, described in the plaintiff's complaint, lies wholly within the boundaries of the land specifically described in the plaintiff's complaint; that Cook's Lake is not in any way connected with White River; that the lake existed and was located approximately as it now is located at the time the original survey of the land surrounding it was made by the United States Government, and that the official plat of said survey by the United States Government reflects that the engineers making said survey meandered the borders of Cook's Lake and showed said lake upon the official plat of their survey as having been meandered; that Cook's Lake has never been used for the purpose of commercial navigation, and is not susceptible of that use; that the condition of the lake is such that water therefrom cannot practically be used for the irrigation of rice fields, or for other agricultural purposes; that Cook's Lake is a swamp and the nature of the water in it is such that it is not reasonably adaptable for use for domestic or municipal purposes; that the lake covers swampy lands in the bottom of White River, all of the lands covered by it being subject to overflow almost annually by the waters of White River; that because of the swampy nature of the land, the banks of the lake and the land in the immediate vicinity of it, with the exception of one small bluff, are not suitable for building residences or pleasure resorts; that because of the swampy nature of the land surrounding the lake and of the lake itself, the waters thereof are not susceptible of use for bathing therein; that Cook's Lake is two miles from the nearest road and three miles from the nearest improved road, is accessible only by trails through wooded and

marshy land, and that in rainy weather the lake can be reached only afoot, or horseback, or by horse drawn vehicle; and that the only useful purpose that Cook's Lake can serve, or has heretofore served, is for fishing therein and hunting water fowl thereon. The court finds that Cook's Lake is not now, nor has it ever been, navigable.

"The court further finds that the defendants in this cause, as the owners of the entire body of land surrounding Cook's Lake, are the owners of the land underlying said lake, and that the defendants have the right to exclude from the lake the plaintiff, or any other member of the public whom they desire to exclude from it by enclosing the land on which the lake is situated within a fence, or by any other peaceful manner."

Based on said findings, the court entered a decree dismissing the complaint for want of equity and this appeal followed.

The undisputed evidence supports the court's findings. Cook's Lake lies adjacent to White River on the west side thereof about 16 miles east of Stuttgart, is crescent shaped, with the ends of the lake nearest the river. Following the middle thread of the lake, it is about two and one-half miles long, but about three-fourths of a mile between the two ends. The width varies from very narrow at the ends to about 200 yards at the widest place, with a depth of a few inches at the ends to six feet. It starts from nowhere and ends nowhere. No person, except a caretaker or overseer, lives near it and there is no cultivated land nearer than a mile away. It has never been navigated, except by fish, mosquitoes, wildfowl and rowboats, or perhaps with small outboard motors.

Appellant very frankly says: "The sole question involved in this appeal is whether Cook's Lake is navigable. If Cook's Lake is not navigable, the appellant admits that John L. Ingram, by virtue of ownership of all of the land surrounding the lake, was the owner of the land lying under the lake and the waters of the lake. If, on the other hand, Cook's Lake is

navigable, the land owned by Mr. Ingram extended only to the high water mark on the banks of Cook's Lake, and land underlying and the waters of the lake are the property of the state of Arkansas.''

The concession as thus made is well taken, for such is the law, and the fact that said lake was meandered by the government surveyors is merely a circumstance tending to show navigability, but is by no means conclusive of the fact. It was held in *Barboro* v. *Boyle,* 119 Ark. 377, 178 S. W. 378, a case upon which appellant bases his case largely if not entirely, that the riparian owner upon a navigable stream takes only to high water mark, the title to the bed of the stream being in the state; but the riparian owner upon a non-navigable stream takes to the center of it. In that case Horse Shoe Lake was involved. That lake was formerly a part of the Mississippi River, was seven miles in length, a maximum width of 2,000 feet, with an average depth of 18 feet with some places 35 feet deep, and this court found that it had never been employed for commercial navigation except ''at irregular intervals,'' but that it was in fact ''susceptible of that use.'' Therein lies the distinction between that case and this. Here, Cook's Lake has not only never been used for commercial navigation at any time, but is not susceptible of that use. There are large trees growing in the lake. The water is too shallow for navigation purposes and its location is such in rainy weather that it is inaccessible, except on foot, on horseback, or with a wagon and team. The nearest all-weather road is three miles away. As said by Judge Hook, in *Harrison* v. *Fite,* 148 Fed. 781, a case involving the navigability of Big Lake, in Mississippi county, Arkansas, ''To meet the test of navigability as understood in the American law a water course should be susceptible of use for purposes of commerce or possess a capacity for valuable flotage in the transportation to market of the products of the country through which it runs. It should be of practical usefulness to the public as a public highway in its natural state and without the aid of artificial means. A theoretical or potential navigability, or one that is temporary, precarious, and unprofitable, is

not sufficient. While the navigable quality of water course need not be continuous, yet it should continue long enough to be useful and valuable in transportation; and the fluctuations should come regularly with the seasons, so that the period of navigability may be depended upon. Mere depth of water, without profitable utility will not render a water course navigable in the legal sense, so as to subject it to public servitude, nor will the fact that it is sufficient for pleasure boating or to enable hunters or fishermen to float their skiffs or canoes. To be navigable a water course must have a useful capacity as a public highway of transportation."

One of our own cases is cited to support the rule stated, *Railway Co.* v. *Brooks,* 39 Ark. 403, 43 Am. St. Rep. 277, where a headnote reads: "The true criterion of a navigable stream is the usefulness of the stream to the population on its banks as a means of carrying off the products of their fields and forests, or bringing to them articles of merchandise. If, in its natural state, without artificial improvements, it may be prudently relied upon and used for that purpose at some seasons of the year, recurring with tolerable regularity, then, in the American sense, it is navigable." See, also, *Ark. Game and Fish Com.* v. *Storthz,* 181 Ark. 1089, 29 S. W. 2d 294.

We conclude that, under any test of navigability of our own or any other court, Cook's Lake is not navigable and that the decree of the trial court is correct, and should be and is affirmed.