MEDLOCK *v*. GALBREATH.

4-7638                                    187 S. W. 2d 545

Opinion delivered May 7, 1945.

*D. Leonard Lingo* and *Cunningham & Cunningham,* for appellant.

*Blackford & Irby,* for appellee.

ROBINS, J. Appellees, commercial fishermen, obtained in the lower court decree enjoining appellants from interfering with appellees in pursuing their fishing operations in Portia Bay, in Lawrence county, Arkansas. Appellants ask us to reverse this decree.

Portia Bay is a body of water about one hundred twenty-five yards wide and three and a half miles in length. It lies in the form of an almost complete circle, and several small creeks empty into it. It has an outlet, through which water runs practically all the year, by way of a small creek, into Black River.

Appellants, who are brothers, own the east half of section 28, and a strip of land one chain wide off the east side of the east half of the west half of section 28, in township 17 north, range 1 west, in Lawrence county. The greater part of Portia Bay is situated within said section 28. In the government survey Portia Bay was not meandered and the lines of the sub-divisions were run across the stream. Appellants, under their deed, have title to the bed of that part of Portia Bay that is contained within their land lines.

Appellants urge that the evidence adduced in the lower court shows that Portia Bay is not a navigable stream, and that they, being the owners of a part of the bed of the stream, have a right to control that part of the surface of the water of said stream that lies above the bed of the stream owned by them. With both these contentions we agree. Without reviewing the evidence, we deem it sufficient to say that the proof in this case

clearly establishes that Portia Bay is not a navigable stream either from a technical or practical standpoint. Appellants have title to the bed of part of this stream, and they undoubtedly have the ownership and control of that part of the surface of the bay that lies above the portion of the bed of the stream that is owned by them.

We think the rule laid down by the Supreme Court of Pennsylvania, in the case of *Smoulter* v. *Boyd,* 209 Pa. 146, 58 Atl. 144, 66 L. R. A. 829, 103 Am. St. Rep. 1000, applies here. There was involved in that case a controversy between adjoining riparian owners as to right to use the surface of a non-navigable lake or pond. Aaron Boyd owned 215 acres, and the lands described in his deeds covered a portion of the bed of the lake. Boyd constructed on the surface of the lake along his land lines a boom of heavy logs fastened together at the ends by iron links and erected thereon a barbed wire fence. Suit was brought by Smoulter and other owners of part of the lake to enjoin the maintenance of this boom and fence. The Supreme Court of Pennsylvania reversed the decree of the lower court granting the injunction and held that Boyd's grant of land in the bed of the lake gave him title *ad coelum et ad inferos* and that therefore, the waters on his land were subject to his use and enjoyment, and concluded its opinion as follows: "Each of the parties owns his land in fee, and included in that ownership is the right to the use of the water while it is on the land. Any use of it for boating purposes by another is an infringement of the rights of property vested in the owner of the land. It follows from what has been said that the defendant had the right to erect the boom on his premises for the purpose of preventing the plaintiffs from boating or sailing on the waters covering his land, and that the trial judge was in error in requiring it to be removed."

But, since the waters of Portia Bay do not lie entirely on lands owned by appellants and are connected with Black River by a running stream, through which fish may migrate in either direction, appellants have no ownership of the fish in this stream.

In the case of *Fritz* v. *State,* 88 Ark. 571, 115 S. W. 385, Fritz was charged with illegally using a net to take fish from Horseshoe Lake, a lake in Crittenden county, Arkansas. The lake was about seven miles long. Fritz owned two tracts of approximately 160 acres each bordering the lake on opposite sides thereof. In affirming conviction this court said: ''It is not wholly upon the premises of the appellant, and is a part of the 'waters of the state,' as defined by the statute. The fish in the same were not in the possession or control of any one, and constituted the private property of no one, and could not be lawfully caught except in the manner provided by the statute.''

Appellants have not constructed any boom or fence, marking their boundary lines on the surface of Portia Bay, so that the waters here involved are uninclosed.

In the case of *Barboro* v. *Boyle,* 119 Ark. 377, 178 S. W. 278, in which a question somewhat similar to the one here presented was involved, this court said: ''In the early settlement of this state, there was much waste and forest land, and an abundance of all kinds of game on them. It was never considered that a person hunting upon the uninclosed lands of another was a trespasser. See *Bizzell* v. *Booker,* 16 Ark. 308. By § 1913 of Kirby's Digest, which was enacted January 21, 1875, persons were prohibited from ranging or hunting on the inclosed land of another without the consent of the owner previously obtained, and such acts constitute a trespass. A like section is contained in the game law passed at the recent session of the Legislature, and approved March 11, 1915. Thus, it will be seen that a person has the exclusive right to hunt and fish upon his inclosed land and private grounds, and that he should be entitled to equitable relief to prevent interference with that right. . . . For the reason that the public has a right to hunt on the uninclosed lands of another, the chancellor should not have granted any injunction.''

We do not have here the question of a trespass upon cultivated, though uninclosed fields, and, since appellants do not have ownership of the fish in Portia Bay

and since the portion of the surface of this water belonging to appellants was not inclosed, it follows that appellees, and the public have a right to fish there in a lawful manner, as long as these waters remain so uninclosed. The decree of the chancellor was, for that reason, correct, and it is affirmed.