FIVE LAKES OUTING CLUB, INC. *v.*
HORSESHOE LAKE PROTECTIVE ASSOCIATION.

5-889                                              288 S. W. 2d 942

Opinion delivered March 26, 1956.

[Rehearing denied April 30, 1956.]

*Daggett & Daggett,* for appellant.

*Davis & Davis, Nance & Nance* and *Hale & Fogleman,* for appellee.

SAM ROBINSON, Associate Justice. Beginning in the year 1903, the appellant Five Lakes Outing Club bought about 3,000 acres of land on the peninsula of Horseshoe Lake in Crittenden County, Arkansas. There are four small lakes on the peninsula purchased by the club:

Mud, Cleaver, Goose and Brushy Lakes; Porter Lake is also in that vicinity. In 1954, the club constructed a levee across Mud Lake at its west end, near the point where it joins Horseshoe Lake, and a levee across Cleaver Lake at its east end, near the point where it joins Horseshoe. The appellees filed this suit, asking that the Five Lakes Club be required to remove the levees. The chancellor held that the levees must be removed, and Five Lakes Club has appealed.

On appeal, appellant argues six points, but by reason of the conclusion we have reached, it is only necessary to discuss the issue of *res judicata,* and the issues of whether Horseshoe Lake is a navigable stream and whether Mud and Cleaver Lakes are a part of Horseshoe Lake.

Horseshoe Lake is about seven miles long, and is shaped as its name implies. It is close to the Mississippi River and, prior to the year 1905, drained into the river from one end through a stream known as Lost River; later, this stream was called Buck Bayou. The north end of the peninsula of Horseshoe Lake is known as Happy Jack.

In 1905, the Mississippi River levee was constructed across Buck Bayou, thereby blocking the drainage from Horseshoe Lake and causing the lake to rise about five feet. This rise in the level of the lake inundated the end of the peninsula consisting of the area known as Happy Jack. About 1914, the Five Lakes Outing Club attempted to enclose Happy Jack with a fence, although at the time, there was water on it to a depth of several feet caused by the five foot rise of Horseshoe Lake. In the case of *State Ex Rel. Thompson* v. *Parker,* 132 Ark. 316, 200 S. W. 1014, this court held that, by reason of the fact that the waters of Horseshoe Lake had covered the land known as Happy Jack for a period of more than seven years, the State had acquired it by prescription.

In the late twenties, J. O. E. Beck and other riparian owners of land adjacent to Horseshoe Lake dug a ditch which was calculated to lower the level of the lake to

the level existing prior to the construction of the levee across Buck Bayou. This court held that Beck and the others had the right to lower the lake to its former level, but the court was of the opinion that the ditch would not actually lower the lake more than three feet. *Beck* v. *State ex rel. Attorney General,* 179 Ark. 102, 14 S. W. 2d 1101.

As heretofore mentioned, there are four small lakes on the land purchased by the Five Lakes Club; all of these lakes connect with Horseshoe Lake in some manner; Cleaver Lake connects with Horseshoe on the east side of the peninsula, and Mud Lake connects with Horseshoe on the west side of the peninsula. It appears that in the rainy seasons, Horseshoe runs into Goose Lake and Brushy Lake, and Horseshoe is connected directly with Porter's Lake by Mosquito Bayou.

First is the question of whether the principle of *res judicata* applies. Appellees contend that the court held, in *Thompson* v. *Parker,* that the State had acquired Mud and Cleaver Lakes by prescription. There, it was stoutly contended by those seeking to establish State ownership by prescription that not only had the State acquired the area known as Happy Jack, but had also acquired Mud and Cleaver Lakes. This court held only that the State had acquired Happy Jack. Although those contending for State ownership maintained that the State had acquired Mud and Cleaver Lakes, as well as Happy Jack, there was no contention on the part of any one that Cleaver Lake and Mud Lake were a part of Happy Jack. It is perfectly clear that Cleaver Lake and Mud Lake were considered to be separate and apart from Happy Jack, and the opinion in *Thompson* v. *Parker* deals only with Happy Jack; hence, the issue of whether the State has acquired Mud and Cleaver Lakes by prescription is not *res judicata.*

Appellant next contends that Horseshoe is not a navigable stream, and, therefore, even if Mud and Cleaver Lakes should be considered a part of Horseshoe, appellants would own all of Mud and Cleaver since they own the land on both sides of those lakes. In *Barboro* v.

*Boyle,* 119 Ark. 377, 178 S. W. 378, we held that Horseshoe Lake is a navigable stream. Once navigable does not mean always navigable. *Parker, Commissioner of Revenues* v. *Moore,* 222 Ark. 811, 262 S. W. 2d 891. But here, there has been no change in the character of the lake from the standpoint of navigability since the *Barboro* case was decided in 1915, hence we cannot now say that Horseshoe Lake is non-navigable.

Last is the question of whether Mud and Cleaver Lakes are a part of the bed of Horseshoe Lake. According to the evidence, Horseshoe Lake was just about at its normal level on May 21, 1955, and the water in Mud and Cleaver Lakes ranged in depth from 3 feet at the point where Mud joins Horseshoe Lake to 1.8 feet where Cleaver Lake joins Horseshoe; there are trees, stumps, and water lilies in both Mud and Cleaver Lakes. Occasionally, both of these lakes have gone dry for considerable periods, even since the dam was built across Buck Bayou. When Horseshoe is at its normal level, which appears to be at the elevation of 191.2 feet, it joins with both Mud and Cleaver Lakes, and undoubtedly the water is at an equal level in Brushy Lake, Goose Lake, and Porter's Lake; in fact, one of the maps shows the level of the water to be 191.2 feet in both Porter's Lake and Mosquito Bayou at the same time water is at 191.2 feet in Horseshoe Lake.

There would not be much more reason for saying that Mud and Cleaver Lakes are part of Horseshoe Lake than there would be for saying Porter's Lake is part of Horseshoe. Horseshoe and Porter Lakes are connected by Mosquito Bayou. Obviously, the water level in Porter's Lake is influenced by the water level in Horseshoe Lake, the same as the water level in Mud and Cleaver Lakes is influenced by the water in Horseshoe. In *Medlock* v. *Galbreath,* 208 Ark. 681, 187 S. W. 2d 545, this court held that Portia Bay, a stream 125 yards wide and 3½ miles long, was non-navigable, and although connected with Black River by a running stream, it was not a part of the river.

⸱ There is no doubt about Mud Lake having existed for many years prior to the construction of the levee across Buck Bayou in 1905. One of the maps introduced in evidence is a contour map prepared by the United States Engineers in 1890 from a survey made in 1878 and 1879. The map shows Mud Lake, and at that time, the elevation of its south bank was 205 feet and this was also the elevation of the north bank, which is pretty much the same as the condition existing today. Photographs in the record made for the purpose of the trial of this case show well-defined banks on Mud Lake, the top of the bank being about ten feet above the water level. The elevation of the bed of Mud Lake is not shown in the 1878 contour map, but it is apparent from the map that the bed of the lake was covered with water at that time. The depth of Horseshoe Lake is shown in detail by cross-sections from one end to the other, but the depth of Mud Lake is not shown; neither is the depth shown as to Brushy Lake and Goose Lake, but the depth of Porter's Lake is shown by cross-sections. The map shows the confluence of Mud Lake with Horseshoe Lake. Horseshoe is meandered, but Mud Lake is not.

When the levee was constructed across Buck Bayou in 1905, it caused the flooding of Happy Jack and raised the water level in Mud and Cleaver Lakes, as well as in Goose Lake, Brushy Lake, Porter's Lake, Mosquito Bayou and Buck Bayou. No doubt, Mud Lake and Cleaver Lake have been dry, from time to time in dry seasons, but Mud Lake was not dry in 1878, when the contour map, above referred to, was made; most of the time following the construction of the levee across Buck Bayou, they have not been dry. But, they were dry in 1954; there is a picture in the record, taken that year, showing a tractor plowing in the bed of Mud Lake.

What we have here are two small lakes joining with a larger lake, and although the smaller lakes join with the larger, they are not a part of the larger. And a rise of the water in the larger lake, causing a rise in the smaller lakes, in no way affects the ownership of the smaller lakes. "It is said to be a universal rule govern-

ing the measurement of waters that where a water of a larger dimension is intersected by a water of a smaller dimension, the line of measurement of the first crosses the latter at the points of junction from headland to headland, and the existence of tidelands in the intersecting water in no respect affects the result.'' 56 Am. Jur. 495.

The Five Lakes Outing Club owns title to the bed of Mud and Cleaver Lakes and, therefore, had the right to build levees across these lakes. *Medlock* v. *Galbreath, supra.*

Justices HOLT, MILLWEE and WARD dissent.

PAUL WARD, Associate Justice (dissenting). I agree with the majority that the opinion in the *Parker* case is not *res judicata,* in favor of appellee of the issue in this case. Having established the above fact, it seems to me that the majority have made the fundamental mistake of attaching no further significance to the decision in the *Parker* case as it relates to the facts in this case. It should be obvious to anyone that the opinion in the *Parker* case should control the opinion in this case, aside from the question of *res judicata,* if the facts in the two cases cannot be definitely and logically distinguished. This distinction has not been made by the majority. It appears to me that practically every argument employed by the majority in this case could have been urged, and most of them were urged, in the *Parker* case.

The majority being unable to agree with the principal argument made by appellants in this case that the *Parker* case should be overruled, and by further admitting that Horseshoe Lake is navigable at this time they have thereby assumed but not discharged the obligation of demonstrating that the material facts in this case are different from the facts in the *Parker* case. In fact, I find nowhere in the majority opinion an attempt to make this distinction. If there is anything in the majority opinion which approaches such an attempt it appears to be the matters which I shall now mention but which, as I shall attempt to point out, are far from convincing.

(a)   The majority point out that there are two other lakes on the peninsula [Goose Lake and Brushy Lake] in addition to the two lakes here involved and state that they are all connected with Horseshoe Lake "in some manner." Just what bearing that fact has on the issue in this case is not explained. Certainly the status of Goose Lake and Brushy Lake could have no more bearing on the title to the bed of Mud and Cleaver Lakes in this case than the status of Mud and Cleaver Lakes had on the title to the bed of Happy Jack Lake in the *Parker* case, and it seems to me the majority opinion admits that there was no significant bearing in the latter instance.

(b)   It is noted by the majority that on May 21, 1955, that the water in Mud and Cleaver Lakes ranged in depth from three feet to 1.8 feet while "Horseshoe Lake was just about at its normal level." Apparently this was an attempt on the part of the majority to show that Mud and Cleaver Lakes are not navigable and therefore not a part of Horseshoe Lake, but this fact is not a paramount issue here. In the first place, under the *Parker* opinion, it is not necessary to show that the two lakes are navigable but merely to show that they are a continuation or a part of Horseshoe Lake which is conceded to be navigable. In the second place, under the *Parker* opinion the banks of Horseshoe Lake extend to the normal *highwater mark* and not to the "normal level."

(c)   The following statements appear in the majority opinion: "What we have here are two small lakes joining with a larger lake, and although the smaller lakes join with the larger, they are not a part of the larger. And a rise of the water in the larger lake, causing a rise in the smaller lakes, in no way affects the ownership of the smaller lakes." The authority for the conclusion reached in the last sentence above quoted, taken from Am. Jur., may or may not be good law under some circumstances but it cannot be accepted here because the ruling in the *Parker* case [which the majority are unwilling to overrule] is just to the contrary under the facts in this case.

Justices HOLT and MILLWEE concur in this dissent.