The Honorable Paul Bookout State Senator
1900 West Washington Jonesboro, Arkansas 72401-2577
Dear Senator Bookout:
This is my opinion on your question about trespass. You provide this information:
 Several property owners live on a watershed lake area between the cities of Jonesboro and Bono in Craighead County near Craighead Road 353. There are approximately thirty-seven acres (37) and eight (8) of the acres thread into a watershed lake for erosion control. The landowners are experiencing tremendous trespassing on their private property due to individuals seeking utilization of the watershed lake. It is the understanding of the landowners that, despite the fact portions of their land are covered with water, they are the legal owners of the land, the bed of the lake and the water, therefore excluding others from fishing, hunting, boating or trespassing on the private land and the water above the land. The watershed lake has adequate posting on the banks and in the water designating property lines.
Your question is:
 The above watershed lake is located on private property and there are adjoining riparian landowners. If landowner A or invitees of landowner A enters the lake, crosses the water boundary line/marker into the portion of the lake owned by landowner B, is this considered trespassing? *Page 2 
RESPONSE
I assume for purposes of this opinion that the lake is not navigable.[1] Each riparian landowner therefore owns part of the lakebed[2] and they collectively own it all. See, e.g., Medlock,supra note 2. Each riparian landowner also owns[3] and has a right to control the lake's surface above the part of the lakebed he or she owns. Id.
Under the common law, going on land without the possessor's consent is trespass. See, e.g., Coleman v. United Fence Co.,282 Ark. 344, 668 S.W.2d 536 (1984).[4] *Page 3 
Thus it is my opinion that, unless some exception applies, [5] it is a trespass for a person to enter without consent on a landowner's portion of the lake's surface.
Entry[6] may also be illegal under other laws.
A person violates the criminal trespass statute, for example, by "purposely enter[ing] or remain[ing] unlawfully in or upon . . . [t]he premises of another *Page 4 
person." A.C.A. § 5-39-203(a) (Repl. 2006). "Premises" includes "any real property." A.C.A. § 5-39-101(3). A person entering land after receiving a specified notice to cease doing so is also guilty of criminal trespass. See A.C.A. § 5-39-304 (Repl. 2006).
Subject to specified defenses, it is a criminal violation to enter unincorporated land that is "[l]awfully posted" or enclosed by a sufficient fence. A.C.A. § 5-39-305 (Repl. 2006). Again subject to specified defenses, it is illegal to enter any posted real property.See A.C.A. § 18-11-403 (Repl. 2003). Your request states that the lake at issue "has adequate posting."[7] Assuming that statement is accurate, it is likely that a person entering an owner's portion of the lake's surface, having no specified defense, is in violation of one or both of these statutes.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.[8]
Sincerely,
DUSTIN McDANIEL Attorney General
[1] A riparian landowner's interest in adjacent underwater land depends on whether the body of water is navigable. See, e.g.,McGahhey v. McCollum, Adm'r,207 Ark. 180, 179 S.W.2d 661 (1944). Rules governing public use of the surface also depend on navigability. See, e.g., Arkansas River RightsComm. v. Echubby Lake Hunting Club,83 Ark. App. 276, 126 S.W.2d 738 (2003). Whether a body of water is navigable is a fact question. See, e.g., id.; Goforth v. Wilson,208 Ark. 35, 184 S.W.2d 814 (1945). This office is not equipped to resolve questions of navigability. See, e.g., Op. Att'y Gen. 2007-308.
[2] Generally, each riparian landowner owns a portion of the bed of a non-navigable lake "to the center of it, ratably with the other riparian proprietors, the extent of his interest depending upon his frontage upon the lake." Barboro v. Boyle,119 Ark. 377, 380, 178 S.W. 378 (1915). Accord Nilsson v.Latimer, 281 Ark. 325, 664 S.W.2d 447 (1984); Person v.Johnson, 218 Ark. 117, 235 S.W.2d 876 (1950); Gill v.Hedgecock, 207 Ark. 1079, 184 S.W.2d 262 (1944). But ownership may not follow this rule in particular cases. If, for example, the relevant deeds describe the land as if no water were present, each owner owns the portion of the lakebed within the boundaries described in his or her deed. See, e.g., Medlock v. Galbreath,208 Ark. 681, 187 S.W.2d 545 (1945). And a grantee of shoreline property owns none of the lakebed if the grantor specifically reserved the lakebed, or otherwise clearly manifested that intention, in the conveyance. See, e.g., Crum v. Craig, 2010 Ark. App. 531;Nilsson, supra; Kilgo v. Cook,174 Ark. 432, 295 S.W. 355 (1927).
[3] I refer principally to a right to possess and control the water's surface directly above the portion of the lakebed owned, not an unfettered right to dispose of the water and its contents. In Arkansas, each riparian landowner has water rights incident to land ownership, including a right, equal to that of the other owners, to make reasonable use of the water. See, e.g., Crum, supra note 2; Harris v.Brooks, 225 Ark. 436, 283 S.W.2d 129 (1955); South Flag Lake,Inc. v. Gordon, 2009 Ark. App. 276, 307 S.W.3d 601. Similarly, riparian landowners generally do not own the fish within their portions of a non-navigable lake. Instead, the fish are "not in the possession or control of any one, and constitute[] the private property of no one. . . ." Medlock, 208 Ark. at 684 (quoting Fritz v. State,88 Ark. 571, 578, 115 S.W. 385 (1909)). (If, however, one person owns the entire lakebed and there is no path for fish to migrate, that person owns the fish. See Arkansas Game Fish Comm'n v. Storthz,181 Ark. 1089, 29 S.W.2d 294 (1930). Even in such a case, however, the person's ownership is subject to at least some state regulatory power over the taking of fish. See Farris v. Arkansas State Game FishComm'n, 228 Ark. 776, 310 S.W.2d 231 (1958). Cf. Fowler v.State, 283 Ark. 325, 676 S.W.2d 725 (1984); Storthz,supra.)
[4] "Land," for this purpose, includes the surface of water above privately-owned land. See, e.g., McGahhey, supra note 1; Kilgo,supra note 2.
[5] It is the "settled American [common law] rule that it is not a trespass for anyone to hunt upon unenclosed wild lands."Shellnut v. Arkansas Game Fish Comm'n,222 Ark. 25, 258 S.W.2d 570 (1953) (emphasis added) (citingBizzell v. Booker, 16 Ark. 308 (1855)). "In the early settlement of this State, there was much waste and forest land, and an abundance of all kinds of game on them. It was never considered that a person hunting upon the uninclosed [sic] lands of another was a trespasser. . . . [Owners] have the exclusive right to hunt and fish on their own lands when they are enclosed." Barboro v. Boyle,119 Ark. 377, 384, 178 S.W. 378 (1915) (emphases added). Where a person does not own the fish in a private lake (see supra note 3) and has not enclosed the portion of the lake's surface belonging to him or her, "it follows that . . . the public have a right to fish there in a lawful manner, as long as these waters remain so uninclosed [sic]."Medlock, 208 Ark. at 685. "Enclose" does not have a precise meaning but denotes in general the presence of "barriers . . . sufficient to notify the public that the land has been appropriated, and to impart to the claim of appropriation the indication of ownership. . . ."Barboro, 119 Ark. at 385. An enclosure, then, is not something that makes it physically impossible for others to enter but something that puts others on notice not to enter. See id. Cf.
A.C.A. §§ 2-39-102,-103 (Repl. 2008) (requiring agricultural "enclosures" to have fences and defining "fence" to mean "a barrier sufficient to indicate an intent to restrict . . . ingress or egress"). The sufficiency of a particular barrier is a question of fact. SeeBarboro, supra. Accordingly, I offer no opinion on this common law doctrine's applicability to this particular lake.
Additionally, in some circumstances a person or the public may acquire a prescriptive right to use real property. See, e.g., Meyers v.Yingling, 372 Ark. 523, 279 S.W.3d 83 (2008). Prescriptive easements usually amount to a right to use another's land for travel only.See, e.g., Cook v. Ratliff,104 Ark. App. 335, 292 S.W.3d 839 (2009). At least one authority would limit prescriptive easements to that use. See Carson v. DrewCounty, 354 Ark. 621, 128 S.W.3d 423 (2003) (Glaze, J., dissenting). Others would not and do not. See, e.g., Echubby, supra note 1 (state's permanent flooding of land may create public prescriptive right of access to hunting and fishing area); Carson, supra
(public prescriptive easement included parking area); Op. Att'y Gen. 2000-307 (facts and circumstances may result in public prescriptive easement for hunting). The existence of a prescriptive easement is a fact-intensive question. See, e.g., Carson, supra. I state no opinion on the existence or absence of any prescriptive easement with respect to the lake at issue.
[6] Once a person has entered without consent a landowner's portion of the lake's surface, the person might do any number of things that may, or may not, themselves be unlawful under the circumstances.See, e.g., A.C.A. 15-43-329 (Repl. 2009) (prohibiting taking fish, without the owner's consent, from an "enclosed or artificial" lake that has been posted in a specified manner); Arkansas Game Fish Commission Code § 11.08 (prohibiting fishing "upon the private property of another without having first obtained permission from a landowner or lessee of the property"). Your question refers only to trespass, so I have not attempted to, nor could I, exhaustively list the unlawful acts a person might commit on or from a landowner's portion of the lake's surface. Nor do I offer an opinion on whether the statute or the rule cited in this note would apply here.
[7] A statute prescribes methods of posting property that is not forest land. See A.C.A. § 18-11-405 (Repl. 2003).
[8] Like all opinions of the Attorney General, this opinion speaks as of its date and will not be revised to address later changes in the law. I note, however, that the General Assembly has proposed a constitutional amendment relating to fishing, among other things, that will be submitted to the voters in November 2010. See SJR 3 of 2009. The amendment, if adopted, will articulate a constitutional "right to hunt, fish, trap, and harvest wildlife . . . subject only to regulations that promote sound wildlife conservation and management and are consistent with Amendment 35. . . ." Id. at § 1(a)(2). The amendment states that it "shall [not] be construed to alter, repeal, or modify . . . [a]ny common law or statute relating to trespass [or] private property rights. . . ." Id. at § 1(c)(2). Accordingly, it is my view that the amendment's adoption will not affect any of this opinion's conclusions.