PARKER, COMMISSIONER OF REVENUES v. MOORE.

5-238                                    262 S. W. 2d 891

Opinion delivered December 21, 1953.

*O. T. Ward,* for appellant.

*R. S. Searcy, Jr.,* and *Graves & Graves,* for appellee.

GRIFFIN SMITH, Chief Justice. Between 1822 and 1838 the course of Red River changed to such an extent that a body of water was isolated from the flowing stream. Its present length is 2.8 miles and the average width is 200 yards. Soundings disclose a maximum depth of about six feet in dry weather, but in shallower parts mud is encountered within a few inches of the surface.

The question for determination is whether Cutoff Lake—now called Spirit Lake—is navigable. An affirmative answer would uphold the state's right to execute oil and gas leases under provisions of Act 285 of 1943. [See Act 321 of 1937]. Leases were procured from the commissioner of revenues in 1950 embracing all of the lake. Owners of adjacent lands brought two suits against the state land commissioner and the commissioner of revenues alleging non-navigability of the lake. Various assignees of lease and royalty interests were brought into the case. It is stipulated that each complaint presents the same legal question and that a determination of one disposes of the other.

Through the attorney general the land-commissioner demurred, contending that the proceeding was against the state. The commissioner of revenues, although named as a defendant, intervened and cross-complained, as did the land commissioner. Each asked for specific relief, hence immunity of the state under § 20 of Art. 5 of the constitution passes from consideration.[1]

Claude A. Rankin, state land commissioner, testified regarding two government surveys: one made in 1822, the other in 1838. In 1822 the lake was a part of the bed of Red River; but after that time and prior to 1838 the river's course changed materially, leaving Cutoff Lake

---

[1] *McCain v. Crossett Lumber Co.,* 206 Ark. 51, 174 S. W. 2d 114; *Arkansas State Highway Commission* v. *Partain,* 193 Ark. 803, 103 S. W. 2d 53.

as a separate body of water. The 1838 survey included lands within the bed of the river as it existed in 1822. No conveyance of this surveyed land had been made by the state, although the leases executed in 1950 were outstanding. The lake is horseshoe in shape, with the east prong about 600 feet from the present river channel. The west prong has filled to such an extent that the area is used for farming.

It is possible that during the period of more than a century since the cutoff occurred local use of the lake to a limited extent was made, but the evidence is conclusive that during the past fifty or sixty years its navigable utility has been negligible. This is not to say that nothing akin to commerce has been transported on these waters. In its strictest sense taking fish and moving them to market is a commercial transaction; and trapping and hunting for profit and consequent use of the lake as a means of transportation for a limited distance would have some of the aspects of commerce and to that extent the waters would be navigable.

But our own decisions and decisions of the U. S. Supreme Court have given the term a practical meaning—a construction in keeping with realistic concepts of transportation. A case in point is *McGahhey* v. *McCollum*, 207 Ark. 180, 179 S. W. 2d 661. Many of the facts disclosed in the suit at bar were present in the McGahhey case. We upheld the chancellor's finding that Cook's Lake was not navigable. In the opinion written by Mr. Justice McHANEY *Harrison* v. *Fite* was cited (148 Fed. 781). Judge WILLIAM C. HOOK of the Eighth Circuit, in dealing with an Arkansas appeal, said that it was necessary—in order to meet the test of navigability as understood in American Law—that a watercourse should be susceptible of use for purposes of commerce or possess a capacity for valuable floatage in the transportation to market of the products of the country through which it runs. It should, he said, be of practical usefulness to the public as a highway in its natural state and without the aid of artificial means. A theoretical or potential navi-

gability, "or one that is temporary, precarious, and unprofitable, is not sufficient."

Nor does it follow that because a stream or body of water was once navigable that it continues so. "Changes," said Judge Hook, "may occur, especially in small and unimportant waters, from natural causes, such as the gradual attrition of the banks and the filling up of the bed with deposits of the soil, the abandonment of use followed by encroachment of vegetation, and the selection by the water of other and more natural and convenient channels of escape."

Such considerations are factual and are to be weighed in determining whether waters once navigable have lost their commercial potential through causes that conflict with the theory of practical usability. In the case with which we are dealing it is shown that fishing was engaged in and that pleasure boats with 25-h.p. motors were occasionally on the lake.

As Judge Hook said in the Harrison-Fite case, ". . . selection by the water of other and more natural and convenient channels of escape" is a factor to be considered in saying whether Red River as a navigable stream was subjected to changes whereby an admittedly useful channel was partially abandoned in favor of a new basin. This transition was a part of physical processes conforming to the natural laws of drainage. We agree with Judge Hook's assertion that "To be navigable a watercourse must have a useful capacity as a public highway of transportation." It is not sufficient to conjecture that at a remote time, in some unknown way, Spirit Lake might be used as a temporary means for rafting logs, or some like endeavor.

The question is whether the lake is susceptible of public servitude as a means of transportation either now or within the foreseeable future when considered in the light of modern methods and the reasonable needs of local commerce.

Quite clearly the appeal is to be resolved upon factual grounds, and since the state's title rests on naviga-

bility, it follows that when the reason for this interest terminated riparian rights attached. ''Once navigable, always navigable'' is not the accepted rule. The status of the sovereign is that of a trustee acting for the common good, and as long as reasonable persons might agree that a lake or stream has commercial value in terms of transportation, or when it affords utilitarian convenience, the state's protecting hand will not permit encroachment.

But here the proof is convincing that navigation long since ceased.

Affirmed.