ARKANSAS DEPARTMENT OF HUMAN SERVICES
*v.*
STATE of Arkansas

92-917                                      850 S.W.2d 847

Supreme Court of Arkansas
Opinion delivered April 5, 1993

*Breck G. Hopkins*, for appellant.

*Leon N. Jamison*, Deputy Prosecuting Att'y, for appellee.

DAVID NEWBERN, Justice. This appeal is from five instances in which a Chancery Court, Juvenile Division, held the Arkansas Department of Human Services (DHS) liable for court costs, probation fees, and restitution to victims as a delinquent juvenile's custodian pursuant to Ark. Code Ann. § 9-27-330(5) & (6) (Supp. 1991). The cases have been consolidated on appeal

because all involve that issue. DHS argues it is not a "custodian" of juveniles in its care as that term is used in the Statute and, even if it is a custodian, sovereign immunity protects it against assessment of the costs and restitution awards in actions it does not initiate. We hold DHS is a "custodian" as that term is used in the Statute, but the doctrine of sovereign immunity precludes the assessment of costs and restitution against DHS in the circumstances presented.

In the first of the cases a juvenile was committed to the Youth Services Center in 1989, 1990, and 1991 for several delinquent acts. When the juvenile's parents filed a petition to terminate their parental rights, DHS sought emergency custody. DHS was given custody on August 27, 1991, and the juvenile was placed in the foster care system.

In December of 1991, the State filed a delinquency petition alleging the juvenile stole several items from her foster mother. The juvenile was again found delinquent and committed to the Youth Services Center. The Juvenile Court required DHS, as the juvenile's custodian, to pay $35 in court costs and $500 in restitution to the victim.

In the second case, DHS filed a petition seeking emergency custody of a dependent-neglected juvenile in July of 1989 which the Court granted. In May of 1991, DHS filed a petition to terminate parental rights. The Juvenile Court granted the petition and gave DHS the authority to consent to the juvenile's adoption without the necessity of parental notification. The juvenile was continued in DHS's custody.

In October of 1991, a delinquency petition was filed against the juvenile for a theft offense. The juvenile was found delinquent and placed on indefinite probation. The Juvenile Court assessed $35 in court costs and a $20 monthly probation fee against DHS in connection with the delinquency proceedings.

In a third case, a juvenile was placed in the Youth Services Center in 1989 for several felonies and misdemeanors. Upon release, the Juvenile Court ordered DHS to open a protective services case on the juvenile and his family. In September of 1990, the juvenile was again committed to the Center, and DHS was awarded custody upon his release. After leaving the Center and

while in DHS's custody, the juvenile perpetrated several delinquent acts causing him to be placed in the Center again. The Juvenile Court required DHS to pay $530.02 in restitution to the victim.

In the fourth case before us, DHS was ordered to open a protective services case on a juvenile and his family in 1989. In April of 1990, the juvenile was committed to the Youth Services Center for several delinquent acts, and upon release, custody was awarded to DHS. In November of 1991, the juvenile was again adjudged delinquent for theft by receiving and assault in the first degree. The Juvenile Court required DHS to pay $1226 in restitution to the victims of the offenses.

The fifth case before us is slightly different only because the juvenile was found to be delinquent for committing an offense while in custody of the Youth Services Center. The Juvenile Court required DHS to pay $2000 in restitution to the victim and $35 in court costs. The Juvenile Court found no difference between a delinquent act committed while in DHS custody and a delinquent act committed while in the custody of the Center which is established under the Youth Services Board. Ark. Code Ann. § 9-28-204 (1987).

DHS moved to vacate the orders imposing court costs, probation fees, and restitution in each of the five cases. DHS argued the Juvenile Court was without subject matter jurisdiction to impose awards in violation of sovereign immunity, contending exclusive jurisdiction over these claims was vested in the Arkansas Claims Commission. The motions were denied.

The Trial Court first determined that the definition of "custodian" in Ark. Code Ann. § 9-27-303(9) (1987) is clear and unambiguous and included DHS. As DHS was a custodian under the clear definition of that term, subsections (5) and (6) of § 9-27-330 apply to it. With respect to the sovereign immunity issue, the Court first held the payment of costs, fees, and restitution in delinquency proceedings was not a "claim" against the State in the traditional sense of the words thus sovereign immunity did not apply. Second, the Court held DHS voluntarily waived its immunity by entering its appearance in the dependency-neglect proceedings and becoming a custodian and a defendant in the delinquency proceedings.

### 1. Statutory interpretation

The Juvenile Code provides that when a juvenile is adjudged delinquent the court may, among other things: (1) assess a court cost of no more than thirty-five dollars to be paid by the juvenile or his parent, guardian, or custodian; (2) order restitution to be paid by the juvenile or his parent, guardian, or custodian; or (3) order a fine of not more than five hundred dollars to be paid by the juvenile or his parent, guardian, or custodian. Ark. Code Ann. § 9-27-330(5) & (6) & (7) (Supp. 1991). Restitution may only be ordered if the loss caused by the juvenile is proven by a preponderance of the evidence, and the amount may not exceed two thousand dollars. Ark. Code Ann. § 9-27-331(d) (Supp. 1991).

■■ The Code defines "custodian" in part as "a person, *agency* or institution to whom a court of competent jurisdiction has given custody of a juvenile by court order." § 9-27-303(9) (emphasis added). In view of the clarity of this provision we need not discuss all of DHS's arguments on this point. DHS is an agency which has been given custody of the four juveniles discussed in the first four cases recited above, thus it is a custodian for purposes of the provisions assessing costs and restitution. When the language of a statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *See, e.g., Patrick* v. *State*, 265 Ark. 334, 576 S.W.2d 191 (1979); *Southern Surety Company* v. *Dardanelle Road Imp. Dist. No. 1*, 169 Ark. 755, 276 S.W.2d 714 (1925).

■ It was clearly wrong for the Trial Court to assess a probation fee against DHS. Section 9-27-330 does not authorize the assessment of a probation fee against a custodian. A juvenile court's authority to assess a probation fee is based upon Ark. Code Ann. § 16-13-326(a) (Supp. 1991). This Statute is silent on assessing a probation fee against a custodian.

### 2. Sovereign immunity

The Statute authorizes the Court to order a custodian such as DHS to pay costs and restitution. The fundamental question is whether that violates the sovereign immunity provision in Ark. Const. art. 5, § 20: "The State of Arkansas shall never be made

defendant in any of her courts." To answer this question, we must first decide whether the Trial Court's orders constitute a claim or claims against the State. Second, we must determine whether DHS has waived its immunity by entering an appearance.

### a. Claim against the State

The Trial Court ruled as follows on the issue of whether there was a claim against the State:

> It is not a lawsuit against the State in the traditional sense of the word. The State, by assuming custody of the juvenile, thereby becomes responsible for the actions of the juvenile and must provide for the well-being and care of that juvenile. When that juvenile is hailed into Court they must appear as the responsible parents, they must partake in the intake process, appear in Court and abide by the Court's decision as parents normally would.

In *Commission on Judicial Discipline & Disability* v. *Digby*, 303 Ark. 24, 792 S.W.2d 594 (1990), Gannett Publishing Company brought a declaratory judgment action seeking to require the Judicial Discipline and Disability Commission to release information from its files to the public. Gannett sought costs and expenses. The Commission argued the Circuit Court was, on the basis of sovereign immunity, without jurisdiction to hear the action. We held the declaratory judgment action could proceed only to the extent the State would incur no financial liability. We granted prohibition to prevent the exercise of jurisdiction with respect to costs and expenses against the State.

In *Beaulieu* v. *Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986), Beaulieu sued administrators and engineers of the Arkansas Highway and Transportation Department for injuries sustained in a car accident. We held sovereign immunity prevented what was, in reality, a suit against the State and stated:

> Accordingly, it is well settled, as a general proposition, that, where a suit is brought against an officer or agency with relation to some matter in which the defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant

> as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent.

citing *Page* v. *McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938). Because the State would be required to pay any judgment, sovereign immunity prevented the claim.

Most cases which address sovereign immunity involve some type of lawsuit being filed against a state agency or officer. *See, e.g., Department of Human Services* v. *Crunkleton*, 303 Ark. 21, 701 S.W.2d 704 (1990); *Arkansas State Highway Comm.* v. *Lasley*, 239 Ark. 538, 390 S.W.2d 443 (1965); *Roesler* v. *Denton*, 239 Ark. 462, 390 S.W.2d 98 (1965). In this case, no one has filed a lawsuit against DHS seeking costs and restitution. Instead, the Court has imposed, under statutory authority, costs and restitutionary awards against a state agency in connection with delinquency proceedings when the agency acts as a custodian of a juvenile.

While no suit, in the traditional sense, has been brought against the State, the State will no doubt have been coerced to bear the financial obligation to pay costs and restitution if the orders are upheld. Any suit, whether in law or equity, which has for its purpose and effect, directly or indirectly, coercing the State, is one against the State. *Watson* v. *Dodge*, 187 Ark. 1055, 63 S.W.2d 993 (1933).

We recognize there is authority for the proposition that a court may impose fines against DHS for contempt. For example, in *Arkansas Department of Human Services* v. *Clark*, 305 Ark. 561, 810 S.W.2d 331 (1991), the Juvenile Court assessed a $250 contempt fine when DHS failed to comply with a court order. *See also Arkansas Department of Human Services* v. *Gruber*, 39 Ark. App. 112, 839 S.W.2d 543 (1992) (court assessed a $150 fine when DHS representative failed to appear at scheduled hearing).

No doubt a fine assessed against DHS is coercive of the State. DHS attempts to distinguish the *Clark* case by arguing that the Trial Court there clearly had the authority to issue the orders found to have been violated by DHS employees. That

misses the point because the order to which the sovereign immunity issue was relevant was the order requiring DHS to pay a fine rather than the orders DHS agents violated which resulted in the fine.

■ Criminal contempt cases constitute an exception to the sovereign immunity doctrine. The power to punish for contempt is an inherent power of the court. *Gatlin* v. *Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991). While we agree the State cannot be coerced as the result of a judgment in favor of a litigant, we recognize that a court must have the authority to control the parties and other persons before it. A state agent or agency having full knowledge of a court order and its import cannot disregard it and claim entitlement to sovereign immunity in response to a contempt citation. See *Cammack* v. *Chalmers*, 284 Ark. 161, 680 S.W.2d 689 (1984), as well as other cases cited in *Commission on Judicial Discipline and Disability* v. *Digby*, *supra*, in which we held an agent of the State is subject to being enjoined for an illegal, unconstitutional, or *ultra vires* act.

### b. Waiver of immunity

The second issue is whether DHS has waived sovereign immunity by obtaining custody of each juvenile and appearing in the delinquency proceedings. The Juvenile Court ruled these actions constituted a waiver by appearance.

■ The leading case on this issue is *Arkansas Game & Fish Comm'n* v. *Lindsey*, 299 Ark. 249, 771 S.W.2d 769 (1989). There, the County Court granted Lindsey a right of access across lands owned by the Game & Fish Commission. The Commission argued sovereign immunity prohibited the action against a state agency. We disagreed, stating the Commission waived sovereign immunity by voluntarily entering its appearance and seeking affirmative relief. We noted the Commission was under no obligation to appear and defend, but upon voluntarily doing so, it submitted to judgment. When the State is the moving party seeking affirmative relief, it is prohibited from raising sovereign immunity as a defense. *Fireman's Ins. Co.* v. *Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990).

■ In none of the proceedings now before us was DHS the initial moving party. Its appearances subsequent to the com-

plaints being filed against the juveniles was pursuant to DHS's obligation to obtain custody of the juveniles in the dependency-neglect proceedings and appear in the delinquency proceedings. The Juvenile Court recognized this by stating, "In order for them [DHS] to carry out their assigned responsibilities they must initiate Petitions in Juvenile Court and thus voluntarily subject themselves to the jurisdiction of that Court." Unlike the Commission in the *Lindsey* case, DHS was under an obligation to appear. It thus did not voluntarily waive sovereign immunity.

Reversed and remanded.