STATE of Arkansas OFFICE OF CHILD SUPPORT
ENFORCEMENT as Assignee of Andrea Kolen *v.* Garry
MITCHELL

97-51                                                954 S.W.2d 907

Supreme Court of Arkansas
Opinion delivered October 23, 1997

*Mona Mizell,* for appellant/cross-appellee.

*Mike Everett,* for appellee/cross-appellant.

RAY THORNTON, Justice. This case involves two issues: the interpretation of Arkansas Rules of Civil Procedure relating to personal service inside the State, and sovereign immunity as a bar to appellee's claim against the State.

Rule (4)(d)(1) of the Arkansas Rules of Civil Procedure provides that substituted service of process may be made on an individual by delivering a copy of the summons and complaint "at his dwelling house or usual place of abode with some person residing therein who is at least 14 years of age . . . ." Appellant, the State of Arkansas Office of Child Support Enforcement (OCSE) asks us to adopt a liberal interpretation of the phrase, "dwelling house or usual place of abode." The rules do not define these terms.

OCSE, acting on a paternity complaint against appellee, Garry Mitchell, served process on Mitchell by handing the summons and complaint to his mother at her house on 714 Lindsey, in Marked Tree, Arkansas. The evidence showed that Mitchell used his mother's address for his mailing address, but that he lived at 507 Sam Anderson, in Marked Tree. When Mitchell failed to appear at the paternity hearing, a default judgment was entered under which Mitchell's wages were garnished for child support. Mitchell immediately filed a motion to have the judgment set aside, claiming that he was not properly served and that he was not the child's father as alleged by the child's mother in the complaint. Mitchell failed to request an abeyance of support payments.

Six months later, the trial court suspended Mitchell's wage garnishment pending the outcome of genetic testing for paternity. By this time, Mitchell had paid $1377 in support to OCSE. When the paternity results showed that Mitchell could not be the child's father, OCSE moved to dismiss its paternity complaint. Mitchell counterclaimed for return of the support payments on the basis that he had not been properly served. The trial court held that service of process was invalid because Mitchell did not live at the location where process was delivered; therefore, the judgment for paternity and child support was void *ab initio*. Further, it found that Mitchell was precluded from suing the State for return of payments under the doctrine of sovereign immunity. OCSE appeals the judgment of the trial court on the validity of service of process, and Mitchell crossappeals the sovereign immunity ruling. We affirm on both points.

OCSE asks the court to broaden the meaning of the phrase, "dwelling house or usual place of abode" to include that location which could be reasonably calculated to provide notice to defendant of a pending action against him. OCSE supports its argument with two opinions from other jurisdictions. In *Doyle v. Barnett*, 658 N.E.2d 107 (Ind. Ct. App 1995), a personal-injury case, Doyle sought to have a default judgment against him set aside because service of process was not delivered to his residence, but rather to his father's house. The evidence showed that Doyle received all of his mail at his father's address, he listed his father's address on the accident report, the address he maintained with his

insurance company was his father's address, and, at the time service was attempted and when he sought to have the default judgment set aide, Doyle's driver's license showed his father's address. In construing dwelling house or usual place of abode, the Indiana Court of Appeals concluded that "[b]ased on the totality of this evidence, we find that it was within the trial court's discretion to determine that Doyle's father's address was Doyle's usual place of abode, and because [plaintiff's] complaint was delivered to that address, that Doyle received proper service of the complaints." *Id.* at 109.

The Washington Supreme Court construed its substituted service statute so as to "effectuate the purpose of the statute while adhering to its spirit and intent." *Sheldon v. Fettig*, 129 Wash. 2d 601, 607, 919 P.2d 1209, 1211 (Wash. 1996). The court recognized two purposes to its statute: "to (1) provide means to serve defendants in a fashion reasonably calculated to accomplish notice and (2) allow injured parties a reasonable means to serve defendants." *Id.* at 608, 919 P.2d at 1212. In *Sheldon*, the defendant had lived away from her parent's home for over two years, but maintained her driver's license, her car insurance, her voter's registration, and mailing address at her parent's house. At the time of service, the defendant was living in another state. The court, recognizing that a defendant can "maintain more than one house of usual abode if each is a center of domestic activity where it would be most likely that defendant would promptly receive notice if the summons were left there," held that defendant had received valid service when process was delivered to her parent's home. *Id.* at 612, 919 P.2d at 1214.

As in *Doyle* and *Sheldon*, above, the facts in this case establish that the defendant, Mitchell, had significant contacts with the place of service. Mitchell received most of his mail at 714 Lindsey. In addition, his driver's license, his employer, and his property assessments all listed 714 Lindsey as his address. The only two sources Mitchell identified as having his 507 Sam Anderson address were his landlord and the gas company, but it appears that he had moved from his mother's house to the Sam Anderson address six years before the commencement of this litigation, and had not thereafter resided at his mother's house. The record

reflects that Mitchell maintained significant ties with his mother's house. He testified that he stops by 714 Lindsey at least three time a week to see his mother and pick up his mail. OCSE claims that a defendant, who represents to most of the world that his address is at a certain location, should not be able to deny that it is otherwise. As a conscientious plaintiff, OCSE pleads that it should not suffer an adverse judgment when it relied on an address that Mitchell reported to sources that OCSE regularly uses for locating putative fathers.

■ Notwithstanding the views of the courts cited above and OCSE's argument, we are bound to prior case law under the doctrine of stare decisis. The policy behind stare decisis is to lend predictability and stability to the law. *Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968) (superseded by statute on other grounds). In matters of practice, "adherence by a court to its own decisions . . . is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases." *Brickhouse v. Hill*, 167 Ark. 513, 523, 268 S.W. 865, 868 (1925) (quoting 7 R.C.L. 1008 (1915)). In *Parish*, this court held that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Parish*, 244 Ark. at 1252, 429 S.W.2d at 52. The test is whether adherence to the rule would result in "great injury or injustice." *Independence Fed. Bank v. Webber*, 302 Ark. 324, 331, 789 S.W.2d 725, 730 (1990).

■ ■ The issue of substituted service was squarely addressed in *Sims v. Prescott Feed Mills, Inc.*, 286 Ark. 22, 688 S.W.2d 743 (1985). In *Sims*, the defendant and his brother lived in the same dwelling. The sheriff attempted to deliver service by handing a copy of the summons and complaint to defendant's brother at law offices of plaintiff's attorney. The defendant never saw the papers. We held that service was void because an attorney's office is not the defendant's dwelling. In so ruling, we said: "Substituted service is a departure from the common law, and rules or statutes providing for it are mandatory and to be complied with exactly." *Id.* at 23, 688 S.W.2d at 744 (citing *Edmonson v. Farris*, 263 Ark. 505, 565 S.W.2d 617 (1978)). We said that this

construction of the rule is the "most certain mode of conveying actual notice to an absent defendant." *Id.* at 23-24, 688 S.W.2d at 744. In *Edmonson*, like the case at bar, the appellant moved the court to set aside the default judgment on the ground of defective service of process. The appellant's wife testified that she collected the summons and complaint at the sheriff's office. In that case, we stated that because the deputy failed to comply with the mandatory provisions of substituted service, the judgment was void *ab initio*. *Id.* at 509, 565 S.W.2d at 618.

OCSE argues that the *Sims* and *Edmonson* cases did not address construction or definition of "dwelling" or "abode," but rather, that these cases are predicated upon obvious departures from the rule. In *Sims*, the summons and complaint were left at a lawyer's office, not at the defendant's, or anyone else's residence. In *Edmonson*, defendant's wife was served at the sheriff's office. OCSE argues that these cases are not on point with the facts present here, as the court did not have to decide whether a residence where service was effected was the defendant's dwelling or usual place of abode.

OCSE's point is well taken. This court, however, defined the term, "usual place of abode" in *McGill v. Miller*, 183 Ark. 585, 37 S.W.2d 689 (1931). In *McGill*, we held that "[o]ne's usual place of abode, in its ordinary acceptation and in the sense used by the statute, means the place where a person lives or has his home, that is, his fixed permanent home; the place to which he has — whenever he is absent — the intention of returning." *Id.* at 589, 37 S.W.2d at 690. The defendant in *McGill* had moved to Little Rock three months before the institution of the suit. He had a permanent job and intended to move his family to Little Rock as soon as he could sell his house in Lafayette County. We held that service was insufficient when his wife was served at the Lafayette County home because the defendant had changed his usual place of abode.

Applying the *McGill* definition of place of abode to the facts in this case, we hold that Mitchell has his usual place of abode in a trailer at the 507 Sam Anderson address. He lives in the trailer, and pays the rent and utilities at that address. Mitchell tes-

tified that he does not live with his mother at the 714 Lindsey address. In light of our holdings that the rule for substituted service of process must be complied with exactly, and because Mitchell intends 507 Sam Anderson as his fixed and permanent home, it follows that service of process at 714 Lindsey was insufficient for the purpose of proper notice.

The factual circumstances in this case are such that continued adherence to precedent does not "give a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Parish*, at 1252, 429 S.W.2d at 52. It may be that a change in rules to place a liberal construction on the meaning of dwelling house or usual place of abode to include a "reasonable notice" component might become appropriate in the future, but we choose to proceed with caution. We should not lose the predictability of knowing that the method of service is the most certain to convey actual notice to an absent defendant. A departure from the settled rule could lead to an escalation of litigation over notice as parties dispute whether notice was actually received, or whether the chosen method was reasonable.

We also note that the current rule does not unduly burden a conscientious plaintiff. If the defendant cannot be served in person or at the place he resides, then the rules provide that the plaintiff may serve process by sending "any form of mail addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee." Ark. R. Civ. P. 4(d)(8)(A). For these reasons, in keeping with the doctrine of stare decisis we adhere to the current rule.

Because service of process was insufficient to give notice, the default judgment below is void *ab initio*. Ark. Code Ann. § 16-65-108 (1987). We reach now Mitchell's claim that the doctrine of sovereign immunity does not bar the court from awarding judgment and assessing damages against the State for monies paid to the custodial parent as child support by him. The doctrine of sovereign immunity comes from constitutional law providing that "[t]he State of Arkansas shall never be made Defendant in any of her courts." Ark. Const. art. 5, § 20. We have held that the doctrine of sovereign immunity is rigid and, as

such, immunity may be waived only in limited circumstances. *Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 258, 943 S.W.2d 230 (1997) (citing *State v. Staton*, 325 Ark. 341, 934 S.W.2d 478 (1996)). Under the doctrine, the State possesses jurisdictional immunity from suit. *Department of Human Servs. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). Where the suit is one against the State and there has been no waiver of immunity, the trial court acquires no jurisdiction. *Cross*, 328 Ark at 259, 943 S.W.2d at 232. We have recognized exceptions to the doctrine of sovereign immunity when an act of the legislature has created a specific waiver of immunity, and when the State is the moving party seeking specific relief. *Id.* (citing *State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996); *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990), *cert. denied* 498 U.S. 824 (1990)). Mitchell argues that, here, the State waived its immunity defense when it brought the paternity and child-support actions against him. We disagree.

In *Fireman's Insurance*, we noted that "[t]he only exception to total and complete sovereign immunity from claims which have been recognized by this court occurs when the state is the moving party seeking specific relief. In that instance[,] the state is prohibited from raising the defense of sovereign immunity as a defense to a counterclaim or offset." *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 455, 784 S.W.2d 771, 774 (1990), *cert. denied* 498 U.S. 824 (1990) (quoting *Parker v. Moore*, 222 Ark. 811, 262 S.W.2d 891 (1953). In *Parker*, this court refused to consider the State's immunity defense when the State Commissioner of Revenues, who was named as a defendant, intervened and crosscomplained, asking for specific relief. *Parker v. Moore*, 222 Ark. 811, 812, 262 S.W.2d 891, 892 (1953). Relying on *Fireman's Insurance*, Mitchell concludes that he is not precluded from claiming a refund because his action in this case was by counterclaim.

In addressing the sovereign-immunity issue, we first decide whether Mitchell has made a claim against the State. If he has, then sovereign immunity applies unless the State has waived its defense. We established the test for determining whether a suit is one against the State in *Page v. McKinley*, 196 Ark. 331, 118

S.W.2d 235 (1938). There, we held that when the relief sought by a decree "operates to control the action of the state or subjects it to liability, the suit is in effect a 'suit against the state' and cannot be maintained without state consent." *Ralls v. Mittlesteadt*, 268 Ark. 741, 743, 596 S.W.2d 349, 351 (1980) (citing *Page*, 196 Ark. at 336–37, 118 S.W.2d at 235)). Accordingly, it is the effect of tapping the state treasury that makes the State a defendant. *See Magnolia Sch. Dist. 14 v. Arkansas State Bd. of Educ.*, 303 Ark. 666, 799 S.W.2d 791 (1990) (noting that this court will not order the State Treasurer to refund money already spent, as such an action would amount to a suit against the State).

We conclude that Mitchell has made a claim against the State. In the action below, OCSE served only as a conduit for support payments. OCSE collected the money from Mitchell and disbursed it directly to the custodial parent. Were OCSE ordered to refund previously paid child support, the only source of payment would be the State Treasury. Such a judgment would subject the State to liability, making the State a defendant as contemplated by the prohibition in Ark. Const. art. 5, § 20. As such, the suit is one against the State, which cannot be maintained unless the State has waived its immunity defense.

To determine whether the immunity defense has been waived, we address two questions: (1) Did the State become a "moving party" by virtue of bringing the paternity and child-support actions; and (2) is the State asking for specific relief. Two recent cases inform our decision that the State is not a moving party. *Arkansas Dep't of Human Servs. v. State*, 312 Ark. 481, 850 S.W.2d 847 (1993); *D.H.S. v. Crunkleton*, 303 Ark. 21, 791 S.W.2d 704 (1990). In *Crunkleton*, we held that the statute providing for wage assignments and deductions for child support "affords no jurisdiction over the state." *Crunkleton*, 303 Ark. at 23, 791 S.W.2d at 705 (referring to Ark. Code Ann. § 9-14-102 (Repl. 1993)). Instead, the statute "merely provides a means by which the payment of child support can be more effectively enforced." *Id.* In that case, DHS did not become a moving party for the purposes of waiver when it acted under the provisions of the statute to collect child-support payments. The next case extends this proposition.

In *Arkansas Dep't of Human Servs. v. State*, the precipitating act was DHS's petition for custody of certain juveniles. In a subsequent action against DHS for court costs and restitution arising from offenses these juveniles committed, DHS claimed the immunity defense. We held that the State was not a moving party when it sought custody of juveniles and appeared in dependency-neglect proceedings. *Id.* at 488-89, 850 S.W.2d at 850. We acknowledged the trial court's finding that DHS is obligated, by statutory mandate, to initiate petitions in juvenile court whereby it voluntarily subjects itself to the jurisdiction of the court. We held that because DHS was under an obligation to appear, it did not voluntarily waive sovereign immunity. *Id.* at 489, 850 S.W.2d at 851 (distinguishing *Arkansas Game & Fish Comm'n v. Lindsey*, 299 Ark. 249, 771 S.W.2d 769 (198)).

■ Like the State in *Arkansas Dep't of Human Services* and *Crunkleton*, OCSE, in bringing its paternity and child-support actions, is acting pursuant to statutory mandate. Under Title IV, part D of the Social Security Act, a state receiving federal funds to administer a plan for child and spousal support must "provide services relating to the establishment of paternity or the establishment, modification, or enforcement of child support obligations . . . to . . . any other child, if an individual applies for such services with respect to the child; and enforce any support obligation established with respect to . . . the custodial parent of such a child." 42 U.S.C. § 654(4)(A)(ii), 654(4)(B)(ii) (Supp. 1997). Select sections within Title 9 of the Arkansas Code, including wage assignments and deductions for child support, govern OCSE actions. Applying the reasoning of *Crunkleton* and *Arkansas Dep't of Human Servs.*, OCSE did not become a moving party for the purpose of waiver when it initiated a paternity and child-support action against Mitchell. Pursuant to statutory law, OCSE was obligated to subject itself to the jurisdiction of the court to procure and enforce child support for the custodial parent. In so doing, it did not voluntarily waive sovereign immunity.

As to whether OCSE sought specific relief, we note, again, that OCSE initiated the action on behalf of the custodial parent for whom it sought specific relief. That parent and the child were not welfare recipients, so OCSE did not itself benefit from the suit

by recouping any of the monies collected from Mitchell as an off-set to a welfare debt. It follows, then, that even if OCSE were a moving party, it did not waive its immunity defense because it did not seek specific relief for itself.

Mitchell has not sought permission to sue the State, nor has the State waived its immunity. *See Arkansas Dep't of Human Servs. v. State; D.H.S. v. Crunkleton, supra.* Therefore, the trial court was correct in ruling that Mitchell's claim is barred by the doctrine of sovereign immunity. Plaintiffs like Mitchell, however, are not left without remedy. The Arkansas State Claims Commission was established to provide for payment of all just and legal debts of the State. Ark. Code Ann. §§ 19-10-201 to -210 (Repl. 1994).

We are bound by the doctrine of stare decisis and the rule of construction of laws in derogation of the common law. As a result, we decline to place a liberal construction on the meaning of dwelling house or usual place of abode in the substituted process rule. This phrase means what it says it means: the place where the defendant lives or resides. Because service of process was delivered to Mitchell's mother's residence, service was invalid to give notice, resulting in void paternity and wage-garnishment judgments. Under the principles of sovereign immunity, this court does not have jurisdiction to order the State to refund Mitchell's child-support payments.

Affirmed.