The Honorable Michael Lamoureux State Representative 105 Sky Ridge Road Russellville, Arkansas 72802
Dear Representative Lamoureux:
I am writing in response to your request for my opinion on the following question:
 Can the Arkansas Department of Finance and Administration negotiate contract language with vendors dealing with the area of sovereign immunity for the State of Arkansas?
RESPONSE
As posed, your question appears to be whether the Arkansas Department of Finance and Administration ("DFA") has the authority by contract to limit the state's sovereign immunity from suit pursuant to Ark. Const. art. 5, § 20. If this is indeed your question, I believe the answer is "no." With some limited exceptions that would not appear to bear on your question, any disputed claim arising from a contractual provision between a state agency and a vendor would need to be resolved before the Arkansas Claims Commission, not the courts, unless the legislature had expressly waived sovereign immunity or the state was the moving party seeking relief. See generally Jack Druff, STATE COURT SOVEREIGN IMMUNITY: JUST WHEN IS THE EMPEROR ARMOR-CLAD?, 24 UALR L.Rev. 255 (2002) (generally discussing the scope of state sovereign immunity). The separate question of whether a state agency's contract provisions with a vendor are supported by adequate consideration is one of fact that this office is neither authorized nor equipped to address. I will note, however, that any state contract not supported by adequate consideration might be challenged as an illegal exaction *Page 2 
under Ark. Const. art. 16, § 13. I will further note that the state is constitutionally barred from assuming the debts of private corporations or private enterprises, Ark. Const. art. 12, § 12, see Ruff v.Womack, 174 Ark. 971, 298 S.W. 222 (1927) — a provision that might potentially apply, for instance, if a state agency contracted to discharge debt owed by a vendor to a third party, particularly if the discharge could not be characterized as adequate consideration for the state agency/vendor contract. The question of whether either of these provisions might apply with respect to any particular contract is purely one of fact beyond the purview of an official Attorney General's opinion. As noted above, however, with respect to the specific question you have posed, in my opinion, a state agency lacks authority to restrict by contract the state's sovereign immunity.
The doctrine of state-court sovereign immunity is set forth at Ark. Const. art. 5, § 20, which provides: "The State of Arkansas shall never be made defendant in any of her courts." This provision must be read in conjunction with Ark. Const. art. 16, § 2, which provides that the legislature shall arrange for payment of all "just and legal debts" incurred by the state.[1] In Fireman's Insurance Company v. ArkansasState Claims Commission, 301 Ark. 451, 784 S.W.2d 771 (1990), the Supreme Court considered the interplay of these two constitutional provisions. The court approvingly invoked a "long and unequivocal line of cases" establishing that "the constitutional prohibition [of suits against the state] was not merely declaratory that the state could not be sued without her consent, but that all suits against the state were expressly forbidden." Id. at 455.
By statute, the General Assembly has delegated to the Arkansas State Claims Commission its constitutional duty to pay all the state's just debts. See A.C.A. § 19-10-204(a) (declaring that subject to certain inapplicable exceptions, the Claims Commission has "exclusive jurisdiction over all claims against the State of Arkansas and its several agencies, departments, and institutions . . ." (emphasis added)). In Fireman's, the court expressly pronounced this post-deprivation procedure consistent with due process. 301 Ark. at 457. The court further stated: *Page 3 
 [T]he Claims Commission is an arm of the General Assembly and the General Assembly has total control over the determination of, and subsequent funding for, payment of the "just debts and obligations of the state" — all other avenues of redress through legal proceedings being barred by the sovereign immunity provision of the Arkansas Constitution. . . .
Id. at 458.
In Hanley v. Arkansas State Claims Commission, 333 Ark. 159, 166,970 S.W.2d 198 (1998), the Court highlighted the terms "total control" and "all other avenues of redress" in quoting the recited passage fromFireman's, thus suggesting a continued policy of avoiding any waiver of sovereign immunity. The Court noted that the Claims Commission was established in 1949 precisely because sovereign immunity barred judicial resolution of direct financial claims against the state and that "all appeals of the Commission's rulings must be heard by the General Assembly, and not the courts." Id.
More recently, in Milberg, Weiss, Bershad, Hynes, and Lerach, LLP etal. v. State, 342 Ark. 303, 320, 28 S.W.3d 842 (2000), the Arkansas Supreme Court offered the following familiar formulation regarding sovereign immunity:
 Sovereign immunity is jurisdictional immunity from suit. State Office of Child Support Enforcem't v. Mitchell, 330 Ark. 338, 954 S.W.2d 907 (1997). This defense arises from Article 5, § 20, of the Arkansas Constitution, which provides: "The State of Arkansas shall never be made a defendant in any of her courts." This court has consistently interpreted this constitutional provision as a general prohibition against awards of money damages in lawsuits against the state and its institutions. See, e.g., Cross v. Arkansas Livestock Poultry Comm'n, 328 Ark. 255, 943 S.W.2d 230 (1997); Fireman's Ins. Co., 301 Ark. 451, 784 S.W.2d 771. The doctrine of sovereign immunity is rigid and may only be waived in limited circumstances. Mitchell, 330 Ark. 338, 954 S.W.2d 907. This court has recognized only two ways in which a claim of sovereign immunity may be surmounted: (1) where the state is the moving party seeking specific relief; and (2) where an act of the legislature has created a specific waiver of immunity. Id. *Page 4 
(Emphasis added.) Accord Arkansas Public Defender Commission v.Burnett, 340 Ark. 233, 12 S.W.3d 191 (2000); Cross v. Arkansas Livestock Poultry Comm'n, 328 Ark. 255, 943 S.W.2d 230 (1997); Fireman's Ins.Co., 301 Ark. 451, 784 S.W.2d 771; Parker v. Moore, 222 Ark. 811,262 S.W.2d 891 (1953).
The Court stated in Solomon v. Valco, Inc., 288 Ark. 106, 107,702 S.W.2d 6 (1986), that "exceptions to the rule prohibiting suits against the state are few." In one such exception, the supreme court has declared that the state is subject to illegal exaction suits filed pursuant to Ark. Const. art. 16, Section 13. See Massongill v. County ofScott, 337 Ark. 281, 285, 991 S.W.2d 105 (1999) ("We have in the past recognized the evident tension between the State's sovereign immunity and the constitutional right of the people to contest an illegal exaction. Carson v. Weiss, 333 Ark. 561, 972 S.W.2d 933 (1998). We resolved that conflict in favor of the people's ability to recover funds wrongfully expended. Streight v. Ragland, 280 Ark. 206, 655 S.W.2d 459
(1983)."). The General Assembly has by statute authorized suits against the state in a few instances. See, e.g., the Arkansas Tax Procedure Act, A.C.A. § 26-18-406 (authorizing judicial review of a final deficiency determination made by DFA). See also Druff, supra (discussing Lake ViewSchool District No. 25 v. Huckabee, 340 Ark. 481, 10 S.W.3d 892 (2000), in which the court deemed it a waiver of sovereign immunity for the state, without having actually entered an appearance, to advocate for a proposed settlement agreement that would obligate it to pay attorneys' fees to counsel challenging the state's system of financing public education).[2]
Even when the state allows suit, as when the Highway Department condemns property without first making provisions for compensation, seeArkansas State Highway Commission v. Flake, 254 Ark. 624, 495 S.W.2d 855
(1973), the supreme court frequently seeks to characterize the consent to suit as something other than a waiver of sovereign immunity. Hence the court in Solomon simply declared that "[c]ondemnation cases are . . . not considered claims against the State." *Page 5 288 Ark. at 108. The state is further deemed not to have waived its sovereign immunity when it is statutorily obligated to appear, as in dependency-neglect proceedings. State of Arkansas Office of ChildSupport Enforcement v. Mitchell, 330 Ark. 338, 348, 954 S.W.2d 907
(1997).
Notwithstanding the few exceptions to what the supreme court has termed generally "rigid" restrictions on waiver mentioned above, it appears doubtful that any agency of the state is authorized to enter into a contract whereby it effectively abrogates sovereign immunity in a manner that appears to flout the express provisions of Article 5, § 20. I do not believe that a state agency is authorized to contract around a constitutional mandate.
To this conclusion, I would simply add that a contractual commitment by the state to indemnify a vendor against liability incurred by the vendor against a third party — which, if disputed, would properly be resolved before the Claims Commission — might further raise issues under Article 12, § 12 and/or Article 16, § 13 for the reasons discussed above. Only a finder of fact could determine whether this were the case. In the absence of direct judicial clarification, I can opine only that it appears highly questionable that a state agency can by contract accede to defend a lawsuit for money damages against it in court, whether the contract be one for indemnification for the liquidated claims of third parties against the vendor or whether it be for another alleged violation by the state of another provision of the contract with the vendor.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] Article 16, § 2 might be read as complementing Ark. Const. art. 2, § 13, which provides generally that "[e]very person is entitled to a certain remedy in the laws. . . ." However, in Hardin v. City of DeVallsBluff, 256 Ark. 480, 485, 508 S.W.2d 559 (1974), the Supreme Court held that the constitution does not require affording claimants "redress for asserted wrongs against counties and cities acting in their governmental capacities." By extension, it appears that article 2, § 13 could not independently be read as obligating the state to provide a forum to entertain claims against it.
[2] With regard to the scope of the Lake View ruling, I find it significant that the court felt obliged to remark that "this is a unique case with a unique set of circumstances." 340 Ark. at 497. In analyzing this remark, the commentator cited above suggested that the "unique" circumstances of Lake View might have prompted the court's apparent disclaimer regarding the general scope of its analysis:
 Among these circumstances might be what seems the court's distaste that the state advocated a proposed settlement that both the trial court and, in retrospect, the Supreme Court itself felt would have ill served the class members' interests. The court further seemed nettled that the state appeared to ratify the substance of this proposed settlement even after the trial court had rejected it, only to withdraw that ratification later. *Page 1