Cite as 2020 Ark. App. 356, VACATED by 2021 Ark. 31

# ARKANSAS COURT OF APPEALS
DIVISION III
**No.** CV-19-781

| | |
|---|---|
| SCOTT WHITE AND JAMIE WHITE | **Opinion Delivered:** August 26, 2020 |
| **APPELLANTS** | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SECOND DIVISION [NO. 60CV-18-4697] |
| V. | |
| HUNTER OWEN AND JOHN DOES NOS. 1–3 | HONORABLE CHRISTOPHER CHARLES PIAZZA, JUDGE |
| **APPELLEES** | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Scott and Jamie White appeal the Pulaski County Circuit Court's grant of appellee Hunter Owen's motion to dismiss their complaint against him with prejudice. We affirm.

### I. *Factual Background*

This case arises from a motor-vehicle accident involving the Whites and Owen that occurred in Pulaski County on August 22, 2015. The Whites filed a complaint against Owen in the Pulaski County Circuit Court on July 9, 2018, alleging he was negligent and that his actions were the proximate cause of their injuries. Prior to being served with the complaint, Owen filed his answer on August 17, 2018, denying any negligence and asserting all affirmative defenses set forth under Rule 12(b) of the Arkansas Rules of Civil Procedure, including insufficiency of process and insufficiency of service of process.

The Whites filed a motion for an extension of time to serve Owen on October 22, 2018, claiming the process server had attempted to serve Owen at his last four known

addresses but was unable to locate him. The circuit court granted the motion and allowed the Whites until February 19, 2019, to serve Owen.

On February 28, Owen filed a motion to dismiss the Whites' complaint, arguing he had never been properly served and that the extended time granted by the circuit court for service had expired. Attached to the motion was the affidavit of Jennifer Armour, Owen's mother, who averred that a man had come to her home at 1808 Windridge Court, Sherwood, Arkansas, on February 15, and asked to speak to Owen. She explained Owen did not reside there and had not since November 2017, but despite that information, the man requested that Armour sign for the documents for Owen. Also attached to the motion was Owen's affidavit stating he did not reside at his mother's house and had not resided there since November 2017. Owens stated that he resided at 3802 Kavanaugh Boulevard, Apartment 702, Little Rock, Arkansas, and had resided there since September 2018; he was not present at his mother's house when service was attempted on him at his mother's residence; and he had not been personally served or served by mail with the summons and complaint in this action. Owen also attached copies of his Entergy bill and his paycheck, both indicating the Kavanaugh Boulevard address.

In his motion, Owen stated that it appeared the Whites had attempted to serve him "pursuant to the requirements of Rule 4(f)(1) (as amended Jan. 1, 2019)," which allows service on a natural person at least eighteen years of age by "leaving the process with any member of the defendant's family at least 18 years of age at a place where the defendant resides." Ark. R. Civ. P. (4)(f)(1)(B) (2019). Owen asserted that the process server delivered the summons and complaint to his mother's house; he does not receive his mail at his

2

mother's house; and he was not present when the process server attempted service at his mother's address nor had he authorized or appointed an agent to receive mail or service of summons on his behalf. Therefore, Owen claimed service had not been perfected on him, and the complaint should be dismissed.

In their response, the Whites asserted they had perfected service on Owen, but even if they had not, their complaint should not be dismissed due to a technicality that was not raised until after the service deadline had lapsed. Attached to the response was the affidavit of process server Jerome Mitchell, who offered a different version of events of the night of February 15. Mitchell stated he went to 1808 Windridge Court, spoke with Armour and asked if Owen was home, and Armour told him Owen was not there. Mitchell said he explained he was there to serve Owen with the complaint; asked if Armour could deliver the papers to Owen; Armour voiced no objection and never indicated Owen did not reside with her; and Armour accepted service. The Whites averred Mitchell confirmed the Windridge Court address as Owen's through voter registration and that address was the one listed on the motor-vehicle collision report. Attached to the response was a copy of Owen's voter registration from March 2014 listing the Windridge Court address. The Whites argued that the fact Owen received bills at a different address did not preclude him from also claiming the Windridge Court address as a valid residence. The Whites further asserted that even if service was not perfected, their action was still commenced for purposes of the savings statute by defective service, and therefore the dismissal should be without prejudice.

In reply to the Whites' response to his motion to dismiss, Owen attached his responses to the Whites' first set of interrogatories, which were answered and returned to

3

the Whites on September 25, 2018. In response to the Whites' request for him to state his residence address, Owen provided the Kavanaugh Boulevard address. These interrogatories were completed prior to the Whites' attempt to serve Owen at his mother's house in February 2019. Owen argued that the Whites relied on his 2014 voter registration, but he had moved out of his mother's house in 2017, and if their argument on this issue prevailed, then "substituted service would be proper anywhere an individual lived in the past." Owen contended the Whites never completed service and should not receive the benefit of the savings statute because they should have known by virtue of his discovery responses that service was not made at his residence.

A hearing was held on Owen's motion to dismiss. Owen's counsel argued service was not completed on Owen because he had provided his address in his discovery responses but there was no effort to serve him at his actual address in Little Rock. The Whites' counsel argued that because Owen's voter registration and driver's license indicated the Windridge Court address, they served Owen at one of his addresses. The Whites' counsel admitted that Owen had provided a utility bill and a paystub in response to their interrogatories, but they asserted they had provided public records for voter registration and Owen's driver's license[1] and argued that Owen had two residences. Owen's counsel responded that a March 2014 voter registration, more than five years old at the time of the hearing, did not prove Owen had two residences, and Owen's current mailing address in Little Rock was provided to the Whites in discovery responses but was disregarded. On

---

[1]A copy of Owen's driver's license was not attached to any of the Whites' responses.

July 8, 2019, the circuit court entered an order granting Owen's motion to dismiss the Whites' complaint with prejudice. The Whites filed a notice of appeal on July 26 appealing the July 8 order.

On August 9, 2019, the Whites filed a motion for reconsideration under Rule 60 of the Arkansas Rules of Civil Procedure, specifically arguing that Arkansas Rule of Civil Procedure 4(k), which was effective as of January 1, 2019, mandated reversal of the circuit court's earlier dismissal with prejudice. This motion was not ruled on by the circuit court.

## II. *Standard of Review*

Service of process is necessary to give a court jurisdiction over a defendant. *Thomas v. Robinson*, 2020 Ark. App. 103, 596 S.W.3d 531. When construing the meaning of a court rule, the appellate courts' review is de novo, using the same means and canons of construction used to interpret statutes. *May v. Goodman*, 2013 Ark. 82. In considering the meaning and effect of a statute or rule, we construe it just as it reads, and the words are given their ordinary and usually accepted meaning in common language. *Id.* The basic rule of statutory construction is to give effect to the intent of the drafting body. *Id.* As a guide to ascertain the drafting body's intent, the appellate courts often examine the history of the statute or rule involved, the contemporaneous conditions at the time of the enactment, the consequences of interpretation, and all other matters of common knowledge within the appellate courts' jurisdiction. *Id.*

## III. *Applicable Version of Rule 4 of the Arkansas Rules of Civil Procedure*

Rule 4 of the Arkansas Rules of Civil Procedure, which sets forth the procedure for the issuance of summons and the service of process, was revised in 2018, with the revisions

to be effective January 1, 2019.  *In re Recommendations of the Comm. on Civ. Practice*, 2018 Ark. 239 (per curiam).  Pertinent to the present case are the changes made to subsections (f) and (k).

The first question to be answered is whether the prior rule or the revised rule is applicable in this case, as the complaint was filed while the old rule was in effect (July 9, 2018), but service was not made (or attempted) until after the rule was revised.  The Whites contend the revised rules apply because service was made after the revisions became effective.  Owen argues the former version of the rule applies because it was in effect when the complaint was filed, and the revised rule does not apply "retroactively" because it disturbs vested due-process rights.  We hold that the revised Rule 4 is applicable in this case because it was the rule in effect when Owen was served in February 2019.

In *May v. Goodman, supra*, our supreme court addressed the issue of "straddle" cases after an amendment to Arkansas Rule of Civil Procedure 12 increased the time for filing an answer for all defendants, resident or nonresident, to thirty days after service of the complaint; the old rule provided only twenty days for in-state residents and thirty days for nonresident defendants.  In *May*, the summonses were issued prior to the effective date of the revised rule but were not served until after the revised rule was in effect.  The circuit court granted the motion to dismiss with prejudice on the basis that the summons was defective.  The supreme court reversed the dismissal and remanded the case, holding that the rule change sought to eliminate, not create, procedural traps.

Likewise, the revised Rule 4 in this case seeks to make service of process less burdensome, not more so.  Owen had the right to be served in accordance with the rules

6

of service of process in effect at the time of service—the revised 2019 version. There was no "retroactive" application of Rule 4, there was simply application of the revised version of the rule that was in effect when Owen was served.

## IV. *Arkansas Rule of Civil Procedure 4(f)*

The Whites argued to the circuit court, and argue now on appeal, that they perfected service on Owen pursuant to revised Rule 4(f)(1)(B), which provides that service of process may be made inside the state on a natural person at least eighteen years of age by "leaving the process with any member of the defendant's family at least 18 years of age at a place where the defendant resides." Prior to revision, this method of service was found at Rule 4(d)(1) and provided, in pertinent part, that service could be made on an individual "by leaving a copy thereof at his dwelling house or usual place of abode with some person residing therein who is at least 14 years of age."

The Reporter's Notes explain that the phrase "a place where the defendant resides" in the revised Rule 4(f)(1)(B) replaces its former counterpart in the prior (d)(1) paragraph that required "dwelling house or usual place of abode." Ark. R. Civ. P. 4 rep. notes, 2019 amend. According to the Reporter's Notes, this change was made to overturn the holding in *State Office of Child Support Enforcement v. Mitchell*, 330 Ark. 338, 349, 954 S.W.2d 907, 913 (1997), which defined "dwelling house or usual place of abode" in terms of domicile. Domicile and residence are not synonymous; a person may have multiple residences but only one domicile. *See Leathers v. Warmack*, 341 Ark. 609, 19 S.W.3d 27 (2000).

The Whites argue that the *Mitchell* holding, which was overturned by the 2019 amendment to Rule 4, is exactly what occurred in the present case. They also cite two

7

cases cited in the Reporter's Notes, *Blittersdorf v. Eikenberry*, 964 P.2d 413 (Wyo. 1998), and *Sheldon v. Fettig*, 919 P.2d 1209 (Wash. 1996), for the proposition that they properly served Owen at his mother's residence. The facts of both of these cases are distinguishable from the facts of the present case.

In *Blittersdorf*, service was left with Blittersdorf's wife in a gift bag in Centennial, Wyoming; at the time of service, Blittersdorf was living in Jackson, Wyoming. He had a one-year lease on residential property in Jackson, a post office box in Jackson, and had registered some of his vehicles in Jackson. His wife and daughter remained in the Centennial home so their daughter could complete the school year. Blittersdorf left tools and construction equipment at the Centennial home because he intended to return there at some time to complete a construction project; in the six months prior to service, he visited his wife and daughter in Centennial approximately fourteen times; he was the sole director and shareholder of the corporation that owned the Centennial home; he voted in the county where Centennial was located a month prior to service of process; and he did not leave a forwarding address at the Centennial post office for his mail but rather relied on his wife to forward mail to him. The Wyoming Supreme Court affirmed the finding that Blittersdorf was properly served at the Centennial address, holding service there was reasonably calculated to result in notice to him.

In *Sheldon*, Sheldon served Fettig at the home of Fettig's parents in Seattle by leaving a copy of the complaint and summons with Fettig's brother. In that case, Fettig had moved from Seattle to Chicago to train to work as a flight attendant. Before moving to Chicago, Fettig had lived for several years on her own in Seattle, had moved to Renton, and then

8

had moved into her parents' home in Seattle for two months prior to moving to Chicago. Fettig used her parents' address as the place she could be contacted before, during, and after the two months she lived with her parents. She gave her parents' address when she was cited for speeding four months before she left for Chicago; she forwarded her mail to her parents' address when she moved in with them and left it as her forwarding address for at least seven weeks after moving to Chicago; two weeks after going to Chicago, she registered to vote in Washington and swore she was a Washington resident living at her parents' address; and her car was registered at her parents' address, her father had power of attorney to sell the car, the car insurance was changed to her parents' address and kept valid until the car was sold, and the bill of sale reflected her parents' Seattle address. Even after moving to Chicago and renting an apartment there, having her mail forwarded to Chicago, joining a health club, and opening a bank account in Chicago, Fettig never got an Illinois driver's license or registered to vote in Chicago. In holding that service of process was sufficient, the Washington Supreme Court stated that since Fettig "used the family home for so many of the indicia of one's center of domestic activity, it is fair to conclude it is a center of her domestic activity." *Sheldon*, *supra*, at 1213. The court noted that not only did Fettig use her parents' address for voting purposes, car registration and insurance, and a speeding ticket, she returned there for frequent visits when not on flights. The court held Fettig maintained two places of usual abode and noted that while most people generally maintained only one house of usual abode for the purpose of service of process, under certain circumstances, a defendant could maintain more than one house of usual abode.

In the present case, Owen had not lived in his mother's house since November 2017, more than a year before the Whites served him there. The only tie to his mother's house presented to the circuit court was proof that Owen had used his mother's address in 2014 for his voter registration. There was no indication Owen received his mail at his mother's address or spent significant amounts of time at his mother's address. In fact, prior to obtaining service of process on Owen, the Whites propounded interrogatories to Owen in which they asked for his address. In answering those interrogatories in September 2018, well before he was served in February 2019, Owen notified the Whites of his address—the Kavanaugh Boulevard address in Little Rock. Therefore, the Whites had actual knowledge of Owen's address before they obtained service on him, yet they never attempted service on him at that address. We cannot say the circuit court erred in finding that the Whites did not properly obtain service on Owen pursuant to Rule 4(f)(1)(B).

V. *Arkansas Rule of Civil Procedure 4(k)*

The Whites next argue that even if there was an error in service under Rule 4(f)(1)(B), any such error should be disregarded pursuant to the new subsection (k) of Rule 4, which provides:

> Any error as to the sufficiency of process or the sufficiency of service of process shall be disregarded if the court determines that the serving party substantially complied with the provisions of this rule and that the defendant received actual notice of the complaint and filed a timely answer.

According to the Reporter's Notes for subsection (k) of the 2019 version of Rule 4, this new provision "reestablishes a substantial-compliance standard for process and service of process under Rule 4 when the defendant has actual notice of the complaint and has filed a timely answer" and is in accord with older Arkansas authority in nondefault cases. Ark. R.

10

Civ. P. 4 rep. notes, 2019 amend. We cannot reach the merits of this argument because the Whites failed to obtain a ruling on this issue.

The order of dismissal with prejudice was entered on July 8, 2019, and the Whites filed a notice of appeal from that order on July 26, 2019. The Whites then filed a Rule 60 motion for reconsideration on August 9, 2019, thirty-two days after the circuit court entered the order of dismissal. The Whites argued for the first time in that motion that the circuit court erred in dismissing their complaint because they had substantially complied with Rule 4's service requirements and because Owen had received actual notice of the complaint, filed a timely answer, participated in discovery, and submitted an affidavit in the motion to dismiss the complaint. The circuit court never ruled on this motion.

Because the Whites failed to get a ruling on their Rule 60 motion, the issue is not preserved for our review. The motion was not deemed denied by operation of law because it was filed more than ten days after entry of the July 8, 2019 order of dismissal, and Rule 60 contains no deemed-denied provision. *See* Ark. R. App. P.–Civ. (4)(b)(1) (2019); *Dale v. White*, 2018 Ark. App. 172, 545 S.W.3d 812. It is well settled that a party's failure to obtain a ruling procedurally bars consideration of the issue on appeal. *See Hurst v. Dixon*, 357 Ark. 439, 182 S.W.3d 102 (2004).

## VI. *Savings Statute*

The Whites contend that even if service was not perfected, they are still entitled to the benefit of the savings statute. Arkansas Code Annotated section 16-56-126 (Repl. 2005) provides a one-year statute of limitations for a plaintiff to refile his complaint if he suffers a nonsuit or after judgment for him is reversed on appeal, allowing plaintiffs to invoke its

11

benefits when the statute of limitations would otherwise bar their claims. In *Clouse v. Tu*, 101 Ark. App. 260, 274 S.W.3d 344 (2008), our court held that when a plaintiff completes timely service of the summons and complaint, his case is commenced even if it is later determined that service was defective in some manner. Our court further held that if a plaintiff files his case during the limitations period and serves process promptly but imperfectly under Rule 4, he is entitled to the grace period provided by the savings statute after the limitations period has expired to refile his case and serve it properly. *Id.* However, in *Eliasnik v. Y&S Pine Bluff, LLC*, 2018 Ark. App. 138, 546 S.W.3d 497, our court held that the attempt at service was not made in good faith, partially because the plaintiff knew the correct address of appellee and did not attempt service there, and therefore the plaintiff was not entitled to the benefit of the savings statute.

The facts of this case are on point with *Eliasnik*. Here, the Whites were aware of the address given by Owen in his interrogatories prior to serving him, yet they made no effort to serve him at that address. We hold that because there was no good-faith effort to serve Owen at the address he provided to the Whites, they are not entitled to the benefit of the savings statute.

Affirmed.

GLADWIN and VAUGHT, JJ., agree.

*Rainwater, Holt & Sexton, P.A.*, by: *Jake M. Logan*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellants.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Jason J. Campbell* and *Caleb D. Lang*, for appellee.